### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____
                                 )

| | |
|---|---|
| **DR. SIMON BANKS, J.D.** ) | |
| **P.O. BOX 17052** ) | |
| **ALEXANDRIA, VA. 22302** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Case: 1:07-cv-02115 (ESH)** |
| ) | |
| **DISTRICT OF COLUMBIA, ET AL** ) | |
| ) | |
| ) | **February 1, 2008** |
| **Defendants** ) | |

### PLAINTIFF'S MOTION PURSUANT TO RULE 56(F) DISCOVERY AND FOR CONTINUANCE OF DEFENDANTS DISPOSITIVE MOTION TO AFFORD PLAINTIFF TIME TO COMPLETE DISCOVERY SO THAT PLAINTIFF MAY SUBMIT RESPONSE TO THE DISTRICT AND DEFENDANT BROWN'S MOTION TO DISMISS AND FOR SANCTIONS

### Pursuant to LCVR 7.1 (m)

The Defendants do not consent to the motion

Comes now Simon Banks, Plaintiff and motion this Honorable Court for Rule 56(f) Fed. R. Civ. P., for Discovery and for extension of time to afford Plaintiff time to complete discovery prior to being required to file response to the District and DeVon Brown's Motion to Dismiss and for Sanctions and in support cites the following:

The Plaintiff critically needs discovery in order to respond to the District and Devon Brown's disparities motion to dismiss and for sanctions.

In support of the motion the Plaintiff incorporate by reference Plaintiff's Memorandum of Law In Support of the Plaintiff's Rule 56(f) Motion.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **DR. SIMON BANKS, J.D.** | ) | |
| **P.O. BOX 17052** | ) | |
| **ALEXANDRIA, VA. 22302** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case: 1:07-cv-02115 (ESH)** |
| | ) | |
| **DISTRICT OF COLUMBIA, ET AL** | ) | |
| | ) | |
| | ) | **February 1, 2008** |
| **Defendants** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RULE 56(F) DISCOVERY AND FOR CONTINUANCE OF DEFENDANTS DISPOSITIVE MOTION TO AFFORD PLAINTIFF TIME TO COMPLETE DISCOVERY SO THAT PLAINTIFF MAY SUBMIT RESPONSE TO THE DISTRICT AND DEFENDANT BROWN'S MOTION TO DISMISS AND FOR SANCTIONS

### Pursuant to LCVR 7.1 (m)

The Defendants do not consent to the motion

Comes now Simon Banks, Plaintiff and submit Plaintiff's Memorandum of Law in support of Plaintiff's Rule 56(f) Discovery and for extension of time to afford Plaintiff time to complete discovery and file response to the District and DeVon Brown's ["defendants"] Motion to Dismiss and for Sanctions and in support cites the following:

( Fed. R. 6(b)(1) of the Fed. R. Civ. P. )

While the Plaintiff is severely prejudiced by the court's previous order precluding the Plaintiff from filing <u>any</u> pleading until the court rules upon defendants motion to

dismiss and for sanctions, treated as "motion for summary judgment," the Plaintiff under extreme litigation disadvantage takes the risk of filing the instant motion because of the unfair litigation position that the Plaintiff has been placed in, a position of peril.

For the past two and a half years the Plaintiff has attempted to secure discovery prior to being subjected to disparities motions and after the defendants had filed previous motion to dismiss the Plaintiff's third amended complaint, previously 05-1514, ESH, the Plaintiff filed Motion pursuant to Rule 56(f) docket numbers 65, 55, 67 and 70. In response to the Plaintiff's Rule 56(f) motion the defendants filed opposition and moved to strike Plaintiff's Rule 56(f) motion at 4 of 5¶#5 and 7 stating that "Plaintiff's motion should be stricken since at no time did defendants file for summary judgment," citing "Plaintiff's several request for discovery, (Dkt/ 68, 70) and on the date of the "meet and confer" scheduling conference, in 05-1514, when and while the Plaintiff had in his "meet and confer" statement, request for discovery for the third time, the instant case was severed from 05-1514, and the Plaintiff was ordered to file a new complaint, cutting Plaintiff off from the federal claims which support both the state law claims and the instant federal 1983 claims.

On 11/22/2006, (Dkt. 72-1) Case 1:05-cv-0514, the District filed opposition to Plaintiff's Second Motion for Discovery and request for a discovery scheduling order. (Dkt. 71), in support stating at 1¶#1:

> **This court should not order discovery or permit the discovery process to commence until resolution of the District of Columbia Defendants' pending disparities motion**

Subsequent to the court, 05-1514 (ESH) having ruled on the District defendants

disparities motion the case was sua sponte severed, and Plaintiff's motion essentially

became moot as to the instant part of the 05-1514 (ESH) severed case.  Initially the

instant case was transferred to Judge Lamberth along with 05-1514 (ESH), shortly

thereafter the case was reassigned  back to the instant court without the Plaintiff being

afforded opportunity for discovery.  Essentially the Plaintiff has been disarmed from the

affidavits and the Rule 56(f) affiants that the Plaintiff introduced in the 05-1514 (ESH)

severed case.

   While the District defendants acknowledged in 05-1514 (ESH) the Plaintiff ought

to be afforded discovery if Plaintiff remain standing subsequent to the court's ruling upon

its then pending disparities motion, the District has now renounced that declaration and

filed a new motion because it knows and have reason to know that it holds all of the

evidence that the Plaintiff needs to produce in order to meet his Section 1983

Constitutional and *Monell* requirements.  The Plaintiff does not have possession of or

evidence of other comparable or statistical cases of other individuals whom were treated

essentially the same as the Plaintiff, so the Plaintiff stands in a position of peril and

placed in a juggernaut as the result of the severance.

   The Plaintiff is unable to show, at this time, without discovery, the subjective

component of "deliberate indifference" by prison officials.  *Estelle,* 429 U.S. at 105.

Likewise, without discovery the Plaintiff is unable to meet his burden of proof that the

District Defendants' conduct were pursuant to official policy, custom, practices and

procedures as required by *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978);

See also, *Triplett v. Dist. Of Columbia,* 108 F.3d 1450, 1453 (D.C. Cir. 1997)("Under §

1983, a municipality is liable …only for constitutional torts arising from action arising

actions pursuant to official policy."

The Plaintiff has previously alleged that the defendants are not entitled to qualified immunity because its employees violated clearly established rights that a reasonable person would know or would have known, and are thus liable. *Crawford-El v. Britton,* 523 U.S. 574, 588 (1998)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18 (1982).

Applying this *Harlow* standard, the first inquiry is whether the individual defendants' conduct was 'discretionary," if not, then qualified immunity is no defense. As the D.C. Circuit has explained, courts "generally define 'discretionary' acts as those involved in the formulation of policy. *Rieser v. Dist. Of Columbia,* 563 F.2d 462, 475 (D.C. Cir. 1977).

Clearly the Plaintiff has stated claims upon which relief can be granted in the instant case.

Clearly the Plaintiff has done nothing that would warrant being denied access to the court, in that the Plaintiff in whole, has filed pleadings in the instant case which derived from the severed case *Id.* and the Plaintiff's pleadings and allegations were made in good faith. However, the Plaintiff will not brief this issue because the Plaintiff needs discovery to respond to the District Defendants Motion to Dismiss and for Sanctions.

The Plaintiff has been subjected to a judicial conspiracy set forth to retaliate against him by Judges of the District of Columbia Court of Appeals, whom the Plaintiff have filed complaints against with the United States Congress and the District of Columbia Judicial Tenure Commission. See Appellant's Amended Petition for Rehearing En Banc filed in In Re Simon Banks, erroneously titled *Simon Banks v. United*

*States of America,* 04-SP-789.  There has been a serious of judicial acts of judicial abuse

of authority, not by the instant court, but by Judges of the District of Columbia Court of

Appeals whom have engaged in acts to cover-up the fact that it never legally acquired

jurisdiction over the appellant's authorized federal practice before administrative

agencies of the United States, protected conduct.

      The Plaintiff deny that he has relinquished nor abandoned his claims of his First

Amendment claim against the District regarding the opening of his legal mail outside of

his presence, and his negligent and training and supervision claim against the District

relating to the provision of dental care.  Moreover, the District does not contend in its

brief that the Plaintiff waived his claim relating to the provision of dental care.

      The Plaintiff is unable to defend against the District defendants motion to dismiss,

absence discovery, with respect to the claims of a) denial of a diabetic diet, b) lack of

heat at the D.C. jail, c) First Amendment claim against the District regarding the opening

of his legal mail outside of his presence, d) negligent and training and supervision claim

against the District relating to the provision of dental care.

      In the severed case, *Simon Banks v. Elwood York, Jr.,* 05-1514 (ESH) this

Honorable Court ordered the parties not to engage in discovery. (Dkt. 34 06/18/2006)

      Indeed the Plaintiff has been severely prejudiced by the severance.  See Plaintiff's

proffer of prejudice.

      The Plaintiff critically needs discovery in order to respond to the District and

Devon Brown's disparities motion to dismiss and for sanctions.

      In support of the motion the Plaintiff incorporate by reference Plaintiff's

_____/s/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
703 965-5637
E-Mail:  drsbanks@msn.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                        )
**DR. SIMON BANKS, J.D.**                )
**P.O. BOX 17052**                            )
**ALEXANDRIA, VA. 22302**              )
                                                        )
                                **Plaintiff**      )
                                                        )
**v.**                                                    )        **Case: 1:07-cv-02115 (ESH)**
                                                        )
**DISTRICT OF COLUMBIA, ET AL**    )
                                                        )
                                                        )        **January ____, 2008**
                                **Defendants**   )


**ORDER**


        Upon consideration of Plaintiff's Motion pursuant to Rule 56(f) for Discovery and

for  extension of time to complete discovery prior to being required to file response to the

District and DeVon Brown's Motion to Dismiss and for Sanctions,  it is this

_____day of February, 2008

        **HEREBY,**

        **GRANTED**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                      )
**DR. SIMON BANKS, J.D.**     )
**P.O. BOX 17052**          )
**ALEXANDRIA, VA. 22302**   )
                      )
           **Plaintiff**    )
                      )
**v.**                    )   **Case: 1:07-cv-02115 (ESH)**
                      )
**DISTRICT OF COLUMBIA, ET AL**   )
                      )
                      )   **February 1, 2008**
          **Defendants**  )

## AFFIDAVIT OF SIMON BANKS PLAINTIFF
## PURSUANT TO 28 § 1746

     I, Simon Banks, Plaintiff, hereby swear pursuant to the penalty of perjury as follows:

     The Plaintiff is unable to defend against the District defendants motion to dismiss, absence discovery, with respect to the claims of a) denial of a diabetic diet, b) lack of heat at the D.C. jail, c) Plaintiff First Amendment claim against the District regarding the opening of his legal mail outside of his presence, d) negligent and training and supervision claim against the District relating to the provision of dental care.

     The Plaintiff critically needs discovery in order to respond to and defend against the District and Devon Brown's dispositive motion to dismiss and for sanctions.

     The Plaintiff was denied diabetic meals, lack of heat at the D.C. Jail where the Plaintiff suffered from extremely cold temperatures.

     The Plaintiff was not treated by the District of Columbia Government prison

authorities for chipped and breaking teeth.


_____/s/_____
Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
703 965-5637
E-Mail:  drsbanks@msn.com

BEFORE THE DISTRICT OF COLUMBIA COURT OF APPEALS

No. 04-SP-789

SIMON BANKS, Appellant

v.

UNITED STATES OF AMERICA

(Improvidently titled by the Clerk of the District
of Columbia Court of Appeals – the United States is not a party)

(Hon. Noel A. Kramer, Trial Judge)  July 10, 2007

APPELLANT'S AMENDED PETITION FOR
REHEARING EN BANC

Comes now, Simon Banks, Appellant, pro se, and submit Appellant's Amended Petition for Rehearing En Banc and for, pursuant to Rule 40 of the District of Columbia Court Rules, appealing the decision of the Per Curiam panel dated December 14, 2007,

This appeal was argued on May 22, 2007 by appointed appeal counsel, before Reid, Blackburne-Rigsby, **Associate Judges and Wagner, Senior Judge**

Consideration of the Full Court is necessary to maintain the integrity of the Court, to promote Judicial Fairness, to protect the Appellant from manifest injustice resulting from Judicial Conflict of Interest and the failure of Senior Judge Annice Wagner, former Chief Judge, District of Columbia Court of Appeals ("DCCA") to recuse as a member of the panel, because of conflict of interest and to avoid the appearance of bias, and conflict of interest.[1]  **The United States is not the Appellee herein. [Emphasis Added]**

---

[1] Judge Wagner: **a) steered the outcome of the trial and sabotaged the Appellant's entire defense, directly and indirectly and covered up the judicial errors,**

misconduct of Judge Kramer, and abuse of authority and arbitrary actions of Judge Kramer,

    b)   Judge Wagner, appointed the investigator and legislator, Stuart Pierson, Chairman of DCCA Committee on Unauthorized Practice, and ignored all complaints Appellant filed against Stuart Pierson,

    c)   Judge Wagner appointed the Prosecutor, Thomas Zeno, AUSA, whom requested of Judge Wagner to appoint him to prosecute the Appellant after the Appellant sued him, *Simon Banks v. Holder, et al*, USDC DC (J. RC Lamberth) and after the Appellant filed complaint with the DCCA to hold Thomas Zeno in Contempt of Court, and After the Appellant filed complaint on March 10, 1999 with R. Keith Thomas, Associate Counsel U.S. Department of Justice Office of Professional Responsibility, for forgery, altering an official court document, corruption, obstruction of justice, etc.;

    d)   Judge Wagner appointed Judge Kramer to prosecute the Appellant and withheld from the Appellant that Judge Kramer was an applicant for Associate Judge of DCCA, and suppressed from the Appellant that Judge Wagner was a sponsor and ardent supporter of Judge Kramer's application for Associate Judge DCCA, and Judge Wagner appeared before the Senate Governmental Affairs Committee confirmation proceedings along with the Hon. Eric Washington, Chief Judge, in support of Judge Kramer, and Judge Wagner condoned the perjurious testimony of Judge Kramer when Kramer testified in response to Senator (Ohio) question whether she was aware of any complaint(s) filed against her, and in response Judge Kramer stated no and that she would not ordinarily be made aware of such complaints, although the Appellant on April 7, 2004 served Judge Kramer via facsimile and Judge Wagner via facsimile and Garland Pinkston, Clerk of DCCA via facsimile, *Simon Banks v. DCCA, Judge Annice Wagner and Judge Noel Kramer,* 04-399 along with complaint for temporary, preliminary and permanent injunctive relief, filed before the United States District Court for the Eastern District of Virginia; and

    e)   Judge Wagner appointed Edward Sullivan, Esq. As the Appellant's Appeal Counsel, whom at all times relevant was a candidate for Magistrate Judge, and whom abandoned the Appellant, after six months from date of his appointment, without ever disclosing to the Appellant that he was a candidate for Magistrate Judge, and whom never discussed with the Appellant Appellant's Assignment of Errors, or any Assignment of Error or appeal strategy, and

    f)   Judge Wagner appointed Attorney Cynthia Nordone as the Appellant's Appeal counsel on June 21, 2005, who used the Appointment to sabotage the Appellant's entire defense, and whom at oral argument, waived the appellant's issue that there was insufficient evidence to find the Appellant guilty of any of the four counts,

    g)   Judge Wagner used Garland Pinkston and his staff, to block the Appellant and otherwise prevent the Appellant from bringing to the Court's

**THE USE OF THE UNITED STATES AS A PARTY BY THE CLERK IS AN EGREGIOUS ABUSE OF THE LOCAL POWER, AND THE MERE APPOINTMENT OF THE U.S. ATTORNEY DOES NOT AUTHORIZE THE HI-JACKING OF THE UNITED STATES AS A PARTY WHERE NO FEDERAL INTEREST IS INVOLVED, AND WHERE THOMAS ZENO, FALSELY AND FRAUDULENTLY SUBMITTED U.S. GRAND JURY SUBPOENAS TO WITNESSES WHERE NO FEDERAL GRAND JURY WAS IMPANELED**.

The United States is not a party to these proceedings.

The proceeding involves one or more questions of exceptional importance:

(A)     **Whether the Court may regulate a member of the public thru a Rule, DC Ct. App. R. 49, without a statute and not violate the Due Process Clause.**

     **See Unconstitutionality of Rule 49 as enforced against Appellant, fn3.**

---

attention, the Appellant's concerns regarding Cynthia Nordone conflict of interest, irreconcilable differences, dilatory tactics, attempts to sabotage the Appellant's Appeal,  terminating Cynthia Nordone, although there was clear evidence of ineffective counsel, conflict of interest, dilatory tactics, and although the Cynthia Nordone requested eight (8) frivolous extensions of time to file the Appellant's brief, without objection from the government, that spanned some 14 months when and while the Appellant was incarcerated for a period of 2 years subsequent to Judge Wagner appointing Cynthia Nordone as Appellant's Appeal Counsel, and although the Appellant was overdetained for some 40 days after the Appellant's sentence expired, with a designated release date of October 2, 2006, Cynthia Nordone's Appellant's brief was not filed until September 10, 2006, and but for the Appellant's self-help of filing his own DC Code §23-110 Emergency Motion for Release on April 12, 2006, resulting in the Appellant being released on April 28, 2006, the Appellant would have been still incarcerated for a period of six months beyond the expiration of the Appellant's Sentence.  See Appellant's Motion to Enjoin Cynthia Frank from continuing to interfere with the Appellant's DC Code § 23-110 proceedings.

h)  And where Cynthia Nordone, was encouraged by Garland Pinkston to file a emergency motion for the Appellant's release on the date of the Appellant's release, April 28, 2006, although the Appellant had been transferred from the CTF to DC Jail on April 26, 2006 in connection with the Appellant's pro se emergency Motion for immediate release.

(B)    The panel decision conflicts with a decision of the United States Supreme

Court, ***Sperry v. State of Florida,*** **373 U.S. 379 (1963),** which provides that

the Supremacy Clause preempt state laws that conflict with rights afforded

pursuant to the laws of the United States.  The Appellant's authority to

practice before administrative agencies of the United States is a protected

right, authorized by the EEOC, 29 C.F.R. §1614.695, and the decision

conflicts with decision of the court to which the petition is addressed,

*Brookens v. District of Columbia Court of Appeals on Unauthorized Practice*

*of Law,* 538 A.2d 1120, Amended Rule 49, Order M-198-96, December 11,

1997, effective February 1, 1998, and it conflicts with the laws of the

domicile and residence of the Appellant, the State of Virginia, **Virginia**

**UPL, UPR 9-102** provides:  "Unauthorized Practice of Law (UPL): Law

related services provided by nonlawyer professional service entitles, *Indeed,*

*a state bar cannot restrict or interfere with practice rights conferred under*

*federal law* , **and consideration by the full court is therefore necessary to**

**secure and maintain uniformity of the court**

(C)    The panels decision conflicts with a decision of the United States Supreme

Court, the United States Civil Service Commission, and the laws of the

District of Columbia with respect to the interchangeability of the titles

"Hearing Examiner" and "Administrative Law Judge  -- they are

synonymous.[2] **See Respondent's Exhibit 19 regarding the**

---

[2] District of Columbia "Workers' Compensation Administrative Law Judges Amendment
Act of 2000, D.C. Law 13-229, Reclassifying the Worker's Compensation "Hearing
Examiners" as "Administrative Law Judges." OAH legislation promoted by Judge John

Interchangeability of the titles "Hearing Examiner" and "Administrative Law Judge."

(D)    This case presents a challenge to the statutory laws of the State of Virginia which authorize its citizens, in particular the Appellant to practice law before administrative agencies of the United States, pursuant to the laws of the United States as an exception to the State of Virginia Unauthorized Practice Law.

## DC CT. APPEALS RULE 49 AS ENFORCED THROUGH ORDER 18 AGAINST THE APPELLANT IS UNCONSTITUTIONAL

(E)    This case presents a facial challenge to the constitutionality of the D.C. Court of Appeals Rule 49 as enforced and applied to the Appellant. Rule 49 through Order 18, as enforced against the Appellant is unconstitutional. [3]

---

Ferren while on sabbatical from DCCA as Corporation Counsel, that triggered his appointment to Vice President of Council for Court Excellence.
    [3] **DC COURT APPEALS RULE 49 IS UNCONSTITUTIONAL D.C. App. R. 49 [Rule 49] is unconstitutional on the basis that it is impermissibly vague on its face, and an arbitrary restriction on personal liberties. *See Chicago v. Morales*, slip *op. No. 97*-1121 at 6 (June 10, 1999), and because it fails to provide notice for parties that it regulates whom are not licensed members of the bar. The notice to this population of regulated must be clear and unambiguous. *See General Elec. Co. v. EPA, 53* F.3[12] 1324, *1328-29 (D.C. Cir. 1995),* and because it fails to give ordinary citizens adequate notice of what is forbidden and what is permitted; *See Coates v. Cincinnati, 405 U.S. 489, 499*, and because it is overly broad and reaches constitutionally protected conduct that is permitted by federal laws. *See Wilson v. Yoder, 406* U.S. 205 (1972); and because it does not provide minimal standards to guide the District of Columbia Court of Appeals' prosecutors, investigators, regulatory police; and judicial officers of the Court. See *Kolender v. Lawson*, 461 U.S. at 358; and because it delegates too much discretion to the judiciary, the police, the DCCA' prosecutors and investigators; See *Smith v. Goguen*, 415 U.S. 566, 575; and because it pre-empts and undermines federal laws and rights under federal laws in violation of the *Supremacy Clause, Art 6, cl, 2; See Ham v. City of Rock Hill, 379 U.S. 306*; and because it violates the District of Columbia Publication Act and Administrative Procedures Act for failure to publish in the District of Columbia**

(F)    This is a case that presents a challenge to the right of the Appellant, a law school graduate and former hearing examiner, to represent himself, pro se against the courts imposing upon the appellant an ineffective counsel whom waived 99 assignments of errors, and ignored the appellant's demands that she enforce pretrial issues argued by the appellant pro se at the trial of the case, and in a wholesale manner, rejected the appellant's affirmative defenses, and although the Appellant attempted to terminate the appointed appeal counsel after she failed to file the Appellant's brief for some 4 months, six months, 12 months, and although it to the Appointed appeals counsel took some 14 months and two weeks to file the Appellant's appeal brief which contained one assignment of error, after seeking and securing some 9 continuances without objection, and where the appointed counsel waived all but one of the

---

Register, rules that it enforce against the general citizenry. *See § 1-1505,§ 1-506*, § 1-1507* of the D.C. Code which requires publication of the District of Columbia Municipal Regulations and Council acts and resolutions, Chap. 15 or 16 of *the Code §1532, § 1533*. See D.C. Law 1-120 *"D.C. Register Publication Act of 1976" of Pub. L. 93-198, effective April 19, 1977. (ref. 23, D.C. Register, 5050, Jan. 26, 1977)*. See also D*.C. Codes § 1-1509 (d),* which requires that parties be afforded opportunity to file exceptions and present arguments, *D.C. Code § 1-262(b), (c). See Mullein v. Central Hanover Bank and Trust Co., 33 U.S. 306, 313; Goldberg v. Kelly, 397 U.S. 255;* and because it promotes, even encourages impermissible restraint on liberty and led to arbitrary enforcement. *Kolender v. Lawson 461 U.S. at 357*; and because it promotes and has led to acts that have abridged the right to travel and engage in commerce. *See Planned Parenthood of Central Mo. V. Danforth, 428 U.S. 52, 82-83 (1976); Kent v. Dulles, 357 U.S. 116, 126 (1958)*; and because it promotes and has led to impermissible restraint on the liberty of contract, *Art. 1§10, Clause 1,* and because it abridges the *Privileges and Immunities Clause, Article IV, Cl. 1. See New Hampshire v. Piper, 470 U.S. 284*; and because it impermissibly operates to trespass and encroach upon the executive or legislative authority, in violation of the separation of powers.

6

Appellant's Assignments of errors and affirmative defenses again at the oral
argument on May 22, 2007.

### DEPRIVATION OF A FAIR TRIAL WHEN JUDGE KRAMER DID NOT RECUSE

1.　　　　The Court deprived the appellant of a fair trial when Judge Kramer did not
recuse, when she suppressed from the Appellant that she was an applicant and candidate
for Associate Judge to the DCCA, and when Judge Kramer waited until the close of the
evidence and the end of the trial to rule upon the Appellant's Motion challenging the
jurisdiction of the Court for purposes of steering the outcome and for the purpose of
preventing the Appellant from submitting challenges to the Court's decision on
jurisdiction .

2.　　　　**Judge Kramer ordered Appellant released on June 7, 2004, and forced
the Appellant to Alexandria, Va. In violation of the Extradition laws and Compact
Act, when the Appellant was serving a sentence imposed by Judge Kramer on June
3, 2004, and Judge Kramer issued a bench warrant on June 24, after the Appellant
was transferred to Virginia on June 23, 2004, therafter causing the Appellant to be
overdetained for 40 days subsequent to the expiration of the Appellant's sentence.**

3.　　　　The Court deprived the appellant of a fair and impartial judge when Judge
Kramer suppressed from the Appellant that she was planning to convict the Appellant
and use her decision against the Appellant as a catalyst to promote her application as an
associate judge to the DCCA, and for purposes of citing her decision in the instant case
involving the Appellant, as her most important case, in response to expected questions
and inquiry of the Senate, requesting her to identify some of her most important cases, for

purposes of promoting her self interest against the Appellant's Constitutional right to a fair trial.

### DEPRIVATION OF EFFECTIVE ASSISTANCE OF COUNSEL AND NULLIFICATION OF THE APPELLANT'S ABILITY TO ASSIST IN HIS APPEAL

4.          The Court deprived the appellant of effective assistance of counsel on appeal and nullified the Appellant's ability to assist in the prosecution of his appeal,  pursuant to the conspiracy between Judge Kramer and Judge Wagner, and Garland Pinkston, to steer the outcome, when the Court directly and indirectly blocked all of the Appellant's efforts to terminate Cynthia Nordone, as Wagner appointed appeal counsel notwithstanding extreme evidence of ineffective counsel, conflict of interest, and that Cynthia Nordone was serving as a second prosecutor. The Court deprived the appellant of his constitutional right to represent himself on appeal, notwithstanding appointed counsel Cynthia Nordone's failure to file the Appellant's appeal for one year and two months after being appointed, and not withstanding the Appellant's numerous complaints against Cynthia Nordone, for irreconcilable differences, ineffective counsel, dilatory tactics, plan to sabotage the Appellant's appeal. Cynthia Nordone passed the Bar in 2002. **See the attached exhibits, 4th Motion to terminate Nordone.  3-14-2006 letter to Nordone.** The *Baish* case, *United States v. Baish,* 460 A.2d 38, 40 (D.C. 1983)  is inapplicable to the instant case, Appellant never called into the District of Columbia, as in *Baish.*

5.          The *Hunter* case, *Hunter v. United States,* 48 U.S. App. D.C. 19 (1918), is inapplicable to the instant case.  The Appellant never went into another state that was under contract with the District of Columbia, to commit an offense against the District of

Columbia in connection with the District of Columbia contract with the sister state. There is no nexus. (Cited in the per curiam decision at 12¶2.)

6.       The DCCA has stretched the reach of its authority to cover the entire United States and its territories, by, based upon a conclusive presumption, articulating that it has nationwide criminal jurisdiction to protect its "orderly administration of justice."  No such right has been vested in the District of Columbia Courts by the Constitution or the United States Congress. Art. 1, §8, cl 17.  To create this legislative stretch by judicial decree is overreaching, and violates the plenary powers of the United States Congress. Art. 1, §8, cl 17.

7.       The Dyson case is inapplicable to the instant case.

8.       The Court order, ordering the Appellant, a resident of the State of Virginia, to State a falsity on advertisements and any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state: that the Appellant is trading as Job Protectors, which the Appellant is not and requiring that the Appellant to state he is not authorized to give opinions concerning any persons legal rights, when the appellant is authorized the Appellant to give legal opinions in connection with the Appellant's authorization to practice law before administrative agencies of the United States.

**9.**       This speech restraint is preempted by the Supremacy Clause, enforcement of 29 CFR §1614,605, 5 U.S.C. §2303, et seq., EEOC Management Directive 110, against Rule 49, and Order 18 which conflict with Rule 49 and Order 18 in that they violates the

Appellant's constitutional rights pursuant to the Supremacy Clause, the First

Amendment. See District of Columbia Court of Appeals (DCCA) Rule 49 as amended,

Order M-198-96, December 11, 1997, effective February 1, 1998.  See Virginia UPL,

UPR 9-102 [4], and See ***Sperry v. State of Florida,*** **373 U.S. 379 (1963), 29 C.F.R.**

**§1614.605; EEOC Management Directive 110 (MD-110), and the Commerce Clause,**

Clearly the lack of practice rules, rules of interpretation, and guidelines to govern

DCCA's enforcement of Rule 49, has led to unequal evaluation.  "The formulation of

uniform rules to determine intent based on these recurring circumstances is practicable

and, we conclude necessary.  *Ibid.* at 7.  **See** *Gore v. Harris,  ___So. 2d__(slip op at*

*51)*(citing from *Bush v. Gore, slip op. No. 00-949, 531 U.S. at 6 (2000).*

The DCCA, from 1987 through the present, interpreted Rule 49 as if it were a

statute, and as not providing the court with jurisdiction over practice before

administrative agencies when applied to the Kentucky attorney **Benoit Brookens,** and the

---

[4] **Virginia UPL, UPR 9-102** provides:  "Unauthorized Practice of Law (UPL): Law
related services provided by nonlawyer professional service entitles, *Indeed, a state bar
cannot restrict or interfere with practice rights conferred under federal law. **See Sperry
v. Florida,** **373 U.S. 379 (1963).  At fn. 5, Va. UPR 9-102** provides: "A partial list of
some federal agencies allowing "qualified representatives" (nonlawyers) to act on behalf
of a party before that agency includes:
  a. **Department of Treasury, internal Revenue Service and Tax Court – 31 U.S.C.
     § 330; 5 U.S.C. § 500; 31 C.F.R. § 10.33; IRC § 7452 and Tax Court Rule of
     Practice and Procedure 200**
  b. **Immigration and Naturalization Service – 8 C.F.R. § 3.1(d)(3)**
  c. **Department of Energy – 10 C.F.R. § 205.3**
  d. **Social Security Administration – 20 C.F.R. § 416.1400**
  e. **Drug Enforcement Agency – 21 C.F.R. § 1316.5-**
  f. **National Labor Relations Board – 29 C.F.R. § 102.38**
  g. **Equal Employment Opportunity Commission – 29 C.F.R. § 1601.7**
  h. **Health and Human Services – 45 C.F.R. § 205.10 (a)(3)(iii)**

**Bellingers,**[5] The DCCA's inconsistent interpretation of its own Rule, Rule 49, has on a sustained and continuous basis deprived the Appellant of equal protection of the laws.

## LACK OF JURISDICTION OVER FEDERAL PRACTICE LOCATED IN THE STATE OF VIRGINIA

10.          The Court erred when it ruled it has jurisdiction over the Appellant's professional authorized practice located in the State of Virginia, licensed to do business in the State of Virginia, *Id.* and authorized by the United States EEOC and the United States Merit Systems Protection Board, nationwide.  The territorial scope of the DCCA's jurisdiction is limited to the jurisdiction vested in it by the United States Congress, Art. 1 §8, cl 17, and the District of Columbia Code.  **See** *Pealmore v. United States,* 411 U.S. 389 at 394 (1973).  See Senate Rep. No. 91-405 at Page 1 through 3, 5, 18; H.R. Rep. No. 91-907, Pp. 23-24-33 pursuant to its Clause 17 authority, Congress enacted laws that compose the District of Columbia Code.  The 1970 Reorganization Act amended the Code by creating the Superior Court of the District of Columbia and the District of Columbia Court of Appeals.  The Courts being expressly established pursuant to Art. 1 of the Constitution.  D.C. Code Ann. § 11-101 ((2)(Supp. V 1972).   See n2 *supra.* The Superior Court among other things, was vested with jurisdiction to hear criminal cases involving alleged violations of criminal laws applicable only to the District of Columbia, *i.d.* § 11-923; the District of Columbia Court of Appeals, with jurisdiction to hear appeals in cases.  *I.d.* § 11-721. (*i.d.* at 398).  None of the acts complained of took place within the District.  The term "within the District" is a term of art.  **See** *Blair-Bey v. Quick,* 151 F.3d. at 1043 [n4].  **See also,** *McCall v. Swain,* 510 F.2d 167 (D.C. 1975).

---

[5] ***Brookens v. District of Columbia Court of Appeals,* 538 A.2d 1120, *Simon v. Bellinger,* 643 F.2d 774 (1980).,** ***Sperry v. State of Florida,* 373 U.S. 379 [1963].**

11.          Judge Levie's speech restrictions contained in Order 18, which derive from

Rule 49, as articulated by the trial judge at 4 Findings of Fact and Legal Conclusions

(FFLC), violates the Appellant's right to Free Speech and Association pursuant to the

Free Speech Clause of the First Amendment, [6] and is preempted by Supremacy Clause.

12.          The DCCA has never promulgated any guidelines for implementation and

enforcement of Rule 49.  **See** *Brookens v. District of Columbia Court of Appeals on*

*Unauthorized Practice of Law,* 538 A.2d 1120.

13.          These speech-restraint prohibitions that burden Appellant and Appellant's

class (unlicensed practitioners whom are not licensed by any state bar) cannot survive the

"rational basis" review which the Court require to be rationally related to a legitimate

governmental purpose."  *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432,

446 (1985).

14.          To punish the Appellant for truthful speech, under the pretext of maintaining

the orderly administration of justice, and by prosecuting the Appellant for practicing law

without a state bar license where no State Bar license is required,  is unethical, wrongful

and violates the prohibition regarding prior restraint and self-censorship which is

disfavored by the First Amendment..  *Fla Star,* 491 at 535.  **See** *New York Times v.*

*United States,* 43 U.S. 713-725-26 (Brennan, J. Contrary), *United States v. Noriega,* 917

F.2d 1543, 1549 (11th Cir. 1990).  The DCCA, under the pretext of protecting the public

---

[6] The Injunction punishes the Appellant for exercising rights connected with Freedom of
Association with the Legal Profession, by virtue of Appellant's Law Degree, by virtue of
his restricted federal administrative practice, by virtue of appellant's former position as
an Administrative Law Judge and Hearing Examiner (both titles are synonymous and
involve adjudicating administrative hearings, where attorneys represented their clients
before the Appellant sitting as a "Judge", a "right closely allied to freedom of speech and
a right which, like free speech, lies at the foundation of a free society.  See *De Jorge v.*
*Oregon*, 299 U.S. 353, 364; *Bates v. Little Rock,* 361 U.S. at 522, 523.

and the administration of justice, ignore Appellant's constitutional rights that authorize

Appellant's practice and titles. (citing from *NAACP v. Alabama ex rel Patterson,* 357

U.S. 449, at 439, "….A state may not, under the gise of prohibiting professional

misconduct, ignore constitutional rights. *See Schware v. Board of Bar Examiners,* 353

U.S 232; *Konig at berg v. State Bar,* 353 U.S. 252.

   The Court may not use *United States v. Baish,* 460 A.2d 38, 40 (D.C. 1983) (cited at

13 ¶1 of the Per Curiam decision), because in *Baish,* the defendant called into the District

   of Columbia, as opposed to the instant case, where the government employee of the

United States Attorney, called the Appellant from a phone, purportedly located in D.C.

## FAILURE TO PROVIDE COUNSEL AT SENTENCING VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHTS

**21.    .The Court** failed to provide defendant counsel at sentencing, and the Court erred

when it did not inquire of defendant whether defendant wished to have counsel appointed

and available at sentencing This error violated defendant's Constitutional Right pursuant

to the Sixth Amendment of the Constitution, the Right to Counsel.  Because of the sua

sponte arrest on April 8, 2004 and the Summary Proceedings on June 3, 2004, the

defendant was unable to bring this claim at trial.  The defendant never waived right to

counsel.  Moreover, the extent of inquiry before accepting a waiver of counsel at

sentencing the Court never engaged in pursuant to the requirement of *Von Moltke v.*

*Gillies,* 332 U.S. 708 (1948), *Moore v. Michigan,* 355 U.S. 155 (1957); *Robins v. United*

*States,* 404 U.S. 1049 (1972 dissenting opinion). See also *Boyd v. Dutton,* 405 U.S.

(1972).  See also *Iowa v. Tovar,* 541 U.S. --, 124 S.Ct. 1379 (2004).

## THE GOVERNMENT CONTACT EXCEPTION PREEMPTS THE COURT JURISDICTION OVER THE DEFENDANT IN CONNECTION WITH THE DEFENDANT'S CONTACTS WITH THE UNITED STATES GOVERNMENT

While the Appellant did not enter the District of Columbia, it is well established law that "Entry into the District of Columbia by nonresidents for purposes of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction" *Environmental Research Int'l, Inc. v. Lockwood Green Eng'rs., Inc*., 355 A.2d 808, 813 (D.C. 1976) (en banc.)  The rationale for this exception.  The **Government Contacts Exception** has been upheld and cited in the following cases:  "The District of Columbia Court of Appeals has stated repeatedly that the jurisdictional reach of DC Code § 13-423 is coextensive with the Due Process Clause.  *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d. 79, 80 (DC 1979), and 521 F.Supp. 142 Supra, the Court cites Judge Ferren in the conclusion reached by the District of Columbia Court of Appeals in *Rose v. Silver*, 394 A.2d. 1368 (DC 1978).  Judge Ferren first distinguished *Environmental Research International Inc. v. Lockwood Green Engineers, Inc.,* 355 A.2d. at 812, which held that the end-state acts of an "independent contractor" could not be attributed to the nonresident for jurisdiction.

### SPECIFIC JURISDICTION UNDER DC CODE § 13-423
### "TRANSACTING BUSINESS"

The government failed to prove that the Appellant purposefully directed his activities at residents of the forum state.  In *Gonzalez v. Internacional De Elevadores*, 2006 DC App LEXIS 21, [HN7] the DC Court of Appeals, provide:

We conducted an extensive analysis of the history of section 13-423 (a) (1) and (b) in *Shopper's Food Warehouse v. Moreno*, 746 A.2d. 320, 324-330 (DC 2000) citing *Int'l, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d. 808, 810-811 (DC 1976) (en banc) …. In other words, the defendant must have minimum contacts with the forum so that exercising personal jurisdiction over it would not offend "traditional notions of fair play and substantial justice."  *Shopper's*, 746 A.2d. at 330 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  **Hence the defendant must have "purposefully directed" [his] activities at residents of the forum ...."**  *Shoppers*, 746 A.2d and 331….**This means that the non-resident defendant's "conduct and connection with the forum state are such that he would reasonably anticipate being haled into court**

there."…..[843] …"This single, responsive mailing cannot constitute meaningful" **contact**, *Burger King*, 471 U.S. at 472, or "substantial connection between the defendant and the forum state, *McGee v. Int'l Life Ins.* (1951)" [HN7] "The scope of its otherwise broad "transacting any business" clause is limited by the rule that contact with a federal instrumentality located in the District will not give rise to personal jurisdiction. *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs.,* Inc. 355 A.2d. 808, 813 (DC App. 1976) en banc.

### THE GOVERNMENT MUST ESTABLISH JURISDICTION OVER PERSON

The government failed to establish jurisdiction over Appellant. The Court in

*United States v. Ferrara*, 54 F.3d. at 833, 1995 U.S. App. LEXIS 11789 at 24 opined:

"…the government must nevertheless establish the District Court's jurisdiction over her person." (citing *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d. 24, 29 (1st Cir. 1988); see also *Edmond v. U.S. Postal Serv. Gen. Counsel*, 292 U.S. App. DC 240 (DC Cir. 1991). **See § 13-423 (A) (4)**

See ***McFarland v. Esquire Magazine*, 74 F.3d at 1301, (citing *Keton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984), *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d. 44, 52 (2nd Cir. 1991),** including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, with the District." The writer is not the publisher; *Unger's* contacts must be accessed separately." See *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984

**ASSOCIATE JUDGE JOHN FERREN, TEMPORARILY STEP DOWN TO BECOME CORPORATION COUNSEL AND FACILITATED A CHANGE IN THE TITLE "HEARING EXAMINER" TO "ADMINISTRATIVE LAW JUDGE" AND THE NEW LAW ARISING OUT OF JUDGE FERREN'S ACTIONS REQUIRED A LICENSE TO PRACTICE LAW AS A CONDITION FOR RETAINING THE CONVERTED HEARING EXAMINER POSITION TO ALJ, WHEN AND WHILE THE DCCA WAS PROSECUTING THE APPELLANT FOR SPEAKING OF THE INTERCHANGEABILITY OF THE TITLES**

See D.C. Administrative Hearing Establishment Act (OAH), D.C. Law 14-76, March 6, 2002. **See DC Law 13-229, Worker's Compensation Administrative Law Judges Amendment Act of 2000 effective April 13, 2001. See attached, Act, Office of Administrative Hearings Establishment Act of 2001.**

15

_____
**Dr. Simon Banks, J.D.**


CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading was mailed, postage prepaid, and/or sent via electronic mail, this 9th day of July, 2007, to:

John P. Mannarino, Esq. AUSA
555 4th Street, N.W.
Washington, D.C. 20305
Jeffrey A. Taylor, Esq. AUSA
W. McLeese, III, AUSA
Lisa Schertler and
John D. Griffith


_____
**Dr. Simon Banks, J.D.**
**P.O. Box 17052**
**Alexandria, Va. 22302**
**703 965-5637**
**drsbanks@msn.com**

**BEFORE THE DISTRICT OF COLUMBIA COURT OF APPEALS**

**No. 04-SP-789**

**SIMON BANKS, Appellant**

**v.**

**DISTRICT OF COLUMBIA COURT OF APPEALS, Appellee**

**(Improvidently titled by the Clerk of the District
of Columbia Court of Appeals)**

**No. 04-SP-789**

**SIMON BANKS**

**v.**

**UNITED STATES, Appellee**

**(Although the United States is not a party and there is no federal interest)**

**APPELLANT'S EN BANC MOTION TO DISMISS THE UNITED STATES AS
THE APPELLEE**

**The appellee reserves its position on the motion**

Comes now, Simon Banks, appellant, pro se, and submit  Appellant's Pro Se En

Banc Motion to Dismiss the United States as the Appellee, and in support cites the

following:

Appellant incorporate by reference Memorandum of Law In Support of the

Appellant's Pro Se En Banc Motion to Dismiss the United States as the Appellee.

_____
**Dr. Simon Banks, J.D.**
**P.O. Box 17052**
**Alexandria, Va. 22302**
**703 965-5637**
**drsbanks@msn.com**

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading was mailed, postage prepaid, and/or sent via electronic mail, this 7th day of August, 2007, to:

John P. Mannarino, Esq. AUSA
555 4th Street, N.W.
Washington, D.C. 20305
Tele# 202 514-0065
Jeffrey A. Taylor, Esq. AUSA
W. McLeese, III, AUSA
Lisa Schertler and
John D. Griffith
John.mannarino@usdoj.gov,
Jeffrey.taylor@usdoj.gov,
Roy.mcleese@usdoj.gov
lisa.schertler@usdoj.gov,
john.griffith@usdoj.gov

_____
**Dr. Simon Banks, J.D.**
**P.O. Box 17052**
**Alexandria, Va. 22302**
**703 965-5637**
**drsbanks@msn.com**

**BEFORE THE DISTRICT OF COLUMBIA COURT OF APPEALS**

**No. 04-SP-789**

**SIMON BANKS, Appellant**

**v.**

**DISTRICT OF COLUMBIA COURT OF APPEALS, Appellee**

**(Improvidently titled by the Clerk of the District
of Columbia Court of Appeals)**

**No. 04-SP-789**

**July 27, 2007**

**SIMON BANKS**

**v.**

**UNITED STATES, Appellee**

**(Although the United States is not a party and there is no federal interest**

**(Hon. Noel A. Kramer, Trial Judge)**

This is to note the filing of **Simon Banks**, **pro se Appellant, Motion En Banc,** **pursuant to DC Code § 23-110 (2001) to Setaside the Decision of the Per Curiam Panel.**

Come now, Dr. Simon Banks, J.D., pro se, Appellant, and submit Motion **En Banc, pursuant to DC Code § 23-110 (2001) to setaside the decision of the per curiam panel:**

i)  because the appellant's right to effective assistance of counsel was violated,

ii)  and because the appellant's right to assist in his appeal and represent himself, Pro Se, was violated,

iii)  and because the D.C. Court of Appeals (DCCA) Judge Noel Anketell Kramer, designated by the Honorable Annice Wagner, Chief Judge DCCA, did not have jurisdiction over the appellant, at all times relevant, a resident of the State of Virginia, to require the appellant to appear in the District of Columbia, and stand trial. (Appellant at all times relevant, appeared specially before the Honorable Judge Kramer.

iv)  and because the DCCA did not have jurisdiction over the appellant's practice of law before the United States Equal Employment Opportunity Commission, the United States Merit Systems Protection Board

v)  and because appellant's related advertisement published in the Federal Times located in the State of Virginia and disseminated nationwide and internationally, which targets employees of the United States Government, the

appellant's market place, and such related conduct is protected conduct, protected by the Supremacy Clause, the Government Contact Exception, and the Free Speech Clause of the United States Constitution

**vi)** and because the appellant was released from the custody of the District of Columbia Department of Corrections, on June 7, 2004 by the trial Judge, the Honorable Noel Anketell Kramer, and the June 7, 2004 release order was never vacated or otherwise legally nullified,

**vii)** and because the appellant was denied a fair trial,

**viii)** and because the appellant was denied a fair appeal,

**ix)** and because the appellant was transferred to the State of Virginia in violation of the Extradition Act, the Compact Act, and Appellant's Substantive Constitutional Procedural Rights,

**x)** and because the appellant was denied counsel at sentencing, and in support the appellant cites the following:

**INEFFECTIVE COUNSEL**

**APPOINTED APPEAL ATTORNEY CYNTHIA NORDONE
AT ALL TIMES RELEVANT WAS AN INEFFECTIVE/CONFLICTED
APPEAL COUNSEL
AND
INACTIONS, FRIVOLOUS, UNFOUNDED DELAY AND ACTIONS OF
APPOINTED COUNSEL CYNTHIA NORDONE, THAT PREJUDICED THE
APPELLANT'S APPEAL, UNWARRANTEDLY PROLONGED THE
APPELLANT'S INCARCERATION AND WAIVED AND ABANDONED
SUBSTANTIVE RIGHTS AND ASSIGNMENT OF ERRORS THAT**

### PREJUDICED APPELLANT'S DUE PROCESS AND EQUAL PROTECTION RIGHTS

1.    Appointed appeal counsel, Cynthia Nordone, knew and had reason to know, and had prior knowledge that Judge Noel Kramer had issued a release order, releasing the appellant from incarceration on June 7, 2004 and that Judge Kramer never vacated the order, and as a consequence the appellant was being unlawfully imprisoned from June 7, 2004 through April 28, 2007.  **By participating in the suppression of exculpatory evidence, intentionally abandoning and otherwise failing to prosecute some 1998 assignment of errors, and intentionally misleading the appellant that she was prosecuting the appellant's interest, attorney Cynthia Nordone, assumed the mantle of prosecutor and functioned as an organ of the State.  *Rickman v. Bell,* 131 F.3d 1150, 1156-57 (6th Cir. 1997) In addition,  appointed appeal counsel, Cynthia Nordone, acted as second prosecutors,  *Georgia v. McCollum,* 505 U.S. 42 (1992). Defense counsel's conduct constitute "state action" in violation of the Fourteenth Amendment. *Faretta v. California,* 442 U.S. 806, 820-821), defense counsel imposed upon the pro se Plaintiff, was an organ of the state**

In Support of allegation of ineffective counsel, the appellant relies upon Release Order dated 7th day of June, 2004, signed by Judge Noel Anketell Kramer,  and the Court's docket sheet entries, in Case No. 02-BG-1374.

2.    Appointed appeal counsel Cynthia Nordone, knew and had reason to know, that the appellant was scheduled to be over-detained by the District of Columbia Department of Corrections, and that the appellant was subjected to deprecatory conditions, and that the appellant needed immediate medical emergency relief, and that

should she not take immediate action, the appellant would be and was subjected to false imprisonment, over-detention, and suffered progressive deprivation of the appellant's medical condition.

In support, of the above-referenced, and this motion, appellant relies upon:

a)   List of Exhibits Connected With Cynthia Nordone Ineffective/Conflicted, Appointed Appeal Counsel, In Support of the Appellant's Motion En Banc pursuant to DC Code § 23-110 (2001) to setaside the decision of the per curiam panel, hereto attached

b)   .Appellant's Appeal Brief filed on November 16, 2005,

c)   ** Defendant's Emergency Motion for Release and to Correct Sentence Pursuant to D.C. Code § 23-110 (1996), D.C. Code § 16-1901 (1989), (dated April 12, 2006) And/Or In the Alternative Emergency Motion for Mandamus Directing the Department of Corrections to Release the Defendant and/or in the Alternative Injunctive Relief Enjoining The D.C. Department of Corrections, Temporarily, Preliminarily and Permanently from Failing to Release the Defendant;

d)   Respondent's Response to Show Cause Order dated June 8, 2006, issued by Judge Ann O'Regan Keary, "why Defendant's Motion, Defendant's Emergency Motion for Release and to Correct Sentence Pursuant to D.C. Code § 23-110 (1996), D.C. Code § 16-1901 (1989), (dated April 12, 2006) And/Or In the Alternative Emergency Motion for Mandamus Directing the Department of Corrections to Release the Defendant and/or in the Alternative Injunctive Relief Enjoining The D.C. Department of Corrections, Temporarily, Preliminarily and Permanently from Failing to Release the Defendant, should not be dismissed

e)   Appellant's Supplemental Brief (Part II) In Support of Petition for Writ of Habeas Corpus, filed in *Banks v. Smith,* 04cv-00903, JRL United States District Court for the District of Columbia (providing a 74-page summary of the case, 02-BG-1374, dated April 15, 2005, and attached to "Appellant's pro se Motion for Emergency Medical Release and/or in the alternative home detention, filed July 22, 2005, in the instant case, and also attaching original complaint *Banks v. York,* No. 05-cv-01514, filed in the United States District Court for the District of Columbia, seeking injunctive relief pursuant to §1983 for violation of Eighth Amendment, for over-detention, and to prevent scheduled over-

detention, and damages.  See 3rd Amended Complaint, amended in 2006 after the Appellant was over-detained for some 40 days.

f)    Defendant's Motion for Temporary, Preliminary, and Permanent Relief from Attorney Cynthia Frank interference with the Defendant's D.C. Code §23-110 proceedings, and fraudulent attempt to sabotage the case.

g)    **"Appellant's ("Plaintiff's Motion for Mandamus Directing Larry Corbett, Acting Warden and Elwood York, Jr., Director of DC Department of Corrections for Correction of Time Served, Good Time Credit and Release Date of** filed on June 24, 2005, in *Simon Banks v. Steven Smith,* Case No. 1:04cv00903, DCCA No. 02-BG-1374 (Petition for Writ of Habeas Corpus Proceedings)

h)    **Plaintiff's Motion for Declaratory Judgment** Pursuant to 28 U.S.C. §2201 seeking the Declaration that the District of Columbia Court of Appeals Rule 49 is Unlawful and Unconstitutional Per Se and as Enforced against Appellant**, filed, June 24, 2005. USDC DC.**

i)    **Defendant's (Appellant) Motion of Defendant That the Court Certify to the Court of Appeals** the Issue of Territorial/Geographical Jurisdiction over the Cause of Action, for Purposes of an Interlocutory Appeal**, filed June 25, 2005.**

j)    **Appellant's Amended Petition for Rehearing En Banc**

k)    **Appellant's Motion to Amend Petition for Rehearing En Banc.**

l)    **Appellant's April 14, 2006 letter to Cynthia Nordone** Re: Appeal Brief, (My Concerns) – "This is to advise you that **the caption** of the case you are using **"***Simon Banks v. United States of America,"* **is "egregiously" in error** and "extremely" contradictory to verifying documentation on the record, my constitutional rights, my legal interest as well as my assignment of Errors regarding *Thomas Zeno, AUSA,* "Improperly mislabeling the –case.."

m)    **Appellant's 4th Motion to Terminate Cynthia Nordone, for Irreconcilable Differences, Breach of Fiduciary Duty, Conflict of Interest and for Dilatory Tactics, Dated March 14, 2006**

n)    Respondent's Response to Agency Objection to Motion for Trial By Jury, filed April 25, 2003

**o)**    Appellant's Emergency Motion En Banc for an order of mandamus directing Superior Court Judge Noel Kramer to issue a show cause order to John Griffith, Assistant U.S. Attorney District of Columbia to

show cause why he should not be held in contempt of court for subornation of perjury, for obstruction of justice, and Rule 11 (at 1¶c *Id.* Which provide**: "And Violation of Rule 11 in connection with the perjurious testimony of Alvin Milton, a witness that the government prepared and called to testify instead of his ex-wife, Brenda Page (appellant's client**)), In support of the motion, appellant incorporate by reference Motion En Banc for an Order of Mandamus directing Superior Court Judge Noel Kramer to issue an Order to Superior Court employee Alvin Milton to show cause why he should not be held in Contempt for Obstruction of Justice and for committing perjury before Judge Noel Kramer."

p)    **Appellant's letter to Mr. Brooks, DCCA, dated April 24, 2006.  Re: Return of Postconviction Motion pursuant to DC Code § 23-110 (1996) – at 1¶1 provides:  "This is to protest the return of the Postconviction Motion that was filed on April 12, 2006...." At ¶3 "It is highly irregular for the Clerk to revise my filing by placing an incorrect case number on the file to make it a Court of Appeals filing in connectioin with the appeal of the case....."**

3.    The appellant further incorporate by reference the list of attached exhibits as well as the exhibits themselves, referred to as **"Exhibits In Support of Motion to Declare Cynthia Nordone an Ineffective/Conflicted Appointed Appeal counsel."**

4.    Appointed appeal counsel, Cynthia Nordone was repeatedly warned and informed that the appellant was subjected to being over-detained and illegally incarcerated beyond the expiration of the appellant's sentence imposed by Judge Noel Kramer, and notwithstanding this prior knowledge, warnings, record evidence, which she knew and had reason to know, she took no action to protect the appellant from unlawful imprisonment.

**5.    APPOINTED COUNSEL CYNTHIA NORDONE'S CONDUCT SO UNDERMINED THE PROPER FUNCTIONING OF THE ADVERSARIAL PROCESS THAT THE APPEAL BRIEF AND ORAL ARGUMENT CANNOT BE RELIED UPON AS HAVING PRODUCED A JUST RESULT**

6.      In support, appellant relies upon **List of Exhibits Connected With Cynthia Nordone Ineffective/Conflicted, Appointed Appeal Counsel, In Support of the Appellant's Motion En Banc pursuant to DC Code § 23-110 (2001) to setaside the decision of the per curiam panel**. and the contents of each of these exhibits. See Appellant's Notice of filing the same. See list of exhibits attached hereto which are all of record.

7.      The basic principles governing our evaluation of Sixth Amendment ineffective assistance of counsel claims are well-settled.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  An ineffective assistance claim therefore has two components:

**APPOINTED COUNSEL'S CONDUCT DEFICIENT AND MADE ERRORS SO SERIOUS THAT COUNSEL WAS NOT FUNCTIONING AS THE "COUNSEL" GUARANTEED THE APPELLANT BY THE SIXTH AMENDMENT AND APPELLANT HAS SHOWN THAT COUNSEL'S DEFICIENT PERFORMANCE PREJUDICED THE APPEAL AND DEPRIVED THE APPELLANT OF A FAIR TRIAL ON APPEAL WHICH RESULT IS UNRELIABLE**

8.      The appellant has shown that counsel's performance was deficient.  The appellant has made a showing that appointed appeal counsel, Cynthia Nordone, made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of fair trial, a trial whose result is reliable.

**THE FUNDAMENTAL FAIRNESS OF THE APPEAL PROCEEDINGS HAS BEEN SEVERELY PREJUDICED, AND DESPITE THE STRONG PRESUMPTION OF RELIABILITY, THE RESULT OF THESE PROCEEDINGS IS UNRELIABLE BECAUSE OF A BREAKDOWN IN THE ADVERSARIAL PROCESS THAT THIS COURT'S SYSTEMS COUNTS ON TO PRODUCE JUST RESULTS**

9.    *Id.* At 687. " In considering these two components, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.: *Strickland v. Washington*, 466 U.S. 668, 686 (1984), At 696." (citing from *Cosio v. United States,* Slip Op Nos. 98-CF-1906 & 02-Co-1453 (June 21, 2007)

**THE TRIAL COURT AND THE PER CURIAM PANEL'S DECISION LACK EVIDENTIARY SUPPORT IN THE RECORD**

10.    "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* At 698.  On appeal, we accept the trial court's findings of fact unless they lack evidentiary support in the record.  *Byrd v. United States*, 614 A.2d 25, 30 (D.C. 1992).  We review the trial court's legal determination de novo.  Id.; see, e.g. *United States v. Little*, 851 A.2d 1280, 1287 n. 10 (D.C. 2004) ("[W]e owe no deference to the trial court's legal conclusion as to whether counsel was deficient," *Chatman v. United States*, 801 A.2d 92, 110 (D.C. 2002) ("[O]ur review of the prejudice prong is *de novo*.")

**APPOINTED APPEAL COUNSEL'S PERFORMANCE WAS SIMPLY UNREASONABLE UNDER PREVAILING PROFESSIONAL NORMS AND APPEAL'S COUNSEL FELL WELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS**

11. Cynthia Nordone, Appointed Appeal Counsel's Performance was simply unreasonable under prevailing professional norms and appeal's counsel fell well below an objective standard of reasonable.

12. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Accordingly, the defendant's burden to show that "counsel's representation fell below an objective standard of reasonableness." *Id*.

**APPOINTED APPEAL COUNSEL DID NOT UNDERTAKE OBJECTIVELY REASONABLE INVESTIGATION NOR DID SHE ENGAGE IN REASONABLE, PROFESSIONAL INVESTIGATION OF THE FACTS, THE ASSIGNMENT OF ERRORS, THE ISSUES FOR APPEAL, AND EFFECTIVELY ABANDONED THE APPELLANT WHEN AND WHILE THE APPELLANT WAS INCARCERATED UNJUSTLY AND OVER-DETAINED AND FALSELY IMPRISONED UNCONSTITUTIONALLY**

13. The proper functioning of the adversary process demands appropriate investigation and preparation by counsel. See *Monroe v. United States*, 389 A.2d 811, 817 (D.C. 1978).

**APPOINTED COUNSEL DECIDED NOT TO INVESTIGATE ALTHOUGH FACTS AND EVIDENCE WERE READILY AVAILABLE TO HER AND KNOWN TO HER THAT THE KNOWN EVIDENCE OUGHT TO HAVE LED APPOINTED COUNSEL TO INVESTIGATE THE ERRORS CITED BY THE APPELLANT IN THE APPELLANT'S 98 ASSIGNMENT OF ERRORS**

14. "In any ineffectiveness case," therefore, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances," id., taking into account "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). (citing from (citing from *Cosio v. United States,* Slip Op Nos. 98-CF-1906 & 02-Co-1453 (June 21, 2007)

15.     Similarly, the issue in evaluating counsel's performance is not the reasonableness of the strategy counsel ultimately pursued at appellant's trial, but "the reasonableness of the investigation said to support that strategy." Id. At 527.[17]

16.     Ultimately, "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000) (citation omitted).

**APPOINTED APPEAL COUNSEL DID NOT NEED TO SCOUR THE GLOBE BUT MERELY REVIEW, INVESTIGATE AND ACCESS THE EVIDENCE PRODUCED BY THE APPELLANT, IN PLEADINGS, COMPLAINTS, MOTIONS, AND APPEALS, IN THE COURT'S RECORD AND OTHERWISE AVAILABLE AS WELL AS THAT WHICH WERE DEMANDED BY THE APPELLANT THAT APPEAL COUNSEL ENFORCE OR JUSTIFY WHY NOT**

17.     The duty to conduct a reasonably thorough investigation "does not force defense lawyers to scour the globe on the off chance something will turn up." *Rompilla*, 545 U.S. at 383 (citation omitted).  Defense counsel has a basic obligation to "conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction."  *Pettiford v. United States*, 700 A.2d 207, 21617 (D.C. 1997) (quoting American Bar Association Standards for Criminal Justice, The Defense Function 4-4.1 (a) (3d ed. 1993)).  We take this as a succinct statement articulating the objective standard of reasonableness applicable to the duty to investigate – the standard of reasonableness that we must apply in this case.  See *Rompilla,* 545 U.S. at 387 (referring

---

[17] *Accord Conner v. Quarterman, 477 F3d 287, 29394 (5th Cir. 2007) (The judgment is whether counsel's investigation was reasonable, not whether counsel's trial strategy was reasonable.") (citation omitted); Outten v. Kearney*, 464 F.3d 401, 417 (3d Cir. 2006) ("[T]he question before us is not whether counsel should have introduced mitigating evidence … it is whether the investigation supporting counsel's decision not to introduce mitigating evidence was itself reasonable.") (internal quotation marks and citation omitted).

to the ABA 17. (citing from *Cosio v. United States,* Slip Op Nos. 98-CF-1906 & 02-Co-1453 (June 21, 2007)

18.    Standards for guidance in determining what is reasonable investigation under prevailing norms of practice).

**APPELLANT HAS SHOWN THERE IS A REASONABLE PROBABILITY THAT, BUT FOR APPEAL COUNSEL'S PROFESSIONAL ERRORS, THE RESULT OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT**

19.    In order to obtain relief on grounds of ineffective assistance of counsel, "[t]the defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

20.    With respect to the following, the appellant's reliance is, in substantial part, based upon the following:

    **i.**    **because the appellant's right to effective assistance of counsel was violated,**

The appellant relies upon ¶s 1-20 above, the appellant relies upon "List of Exhibits Connected With Cynthia Nordone Ineffective/Conflicted, Appointed Appeal Counsel, In Support of the Appellant's Motion En Banc pursuant to DC Code § 23-110 (2001) to setaside the decision of the per curiam panel," hereto attached.

    **ii.**    **and because the appellant's right to assist in his appeal and represent himself, Pro Se, was violated.**

The appellant reassert the reliance set forth in ¶i.

The appellant relies upon appellant's 4th Motion to Terminate Cynthia Nordone dated March 14, 2005, and appellant's letter to Cynthia Nordone dated April 14, 2006. The appellant further relies upon ¶s1- List of Exhibits Connected With Cynthia Nordone

Ineffective/Conflicted, Appointed Appeal Counsel, In Support of the Appellant's Motion

En Banc pursuant to DC Code § 23-110 (2001) to setaside the decision of the per curiam

panel, hereto attached

      **iii.** **and because the D.C. Court of Appeals (DCCA) Judge designated by the Honorable Annice Wagner, Chief Judge DCCA, did not have jurisdiction over the appellant, at all times relevant, a resident of the State of Virginia, to require the appellant to appear in the District of Columbia, and stand trial**

The appellant relies upon appellant's Amended Petition for Rehearing En Banc

("AMPRHEB") at 3-6, 9-14, and Appellant's pro se Brief filed on November 16, 2004, at

4-25, 26-51).

      **iv.** **and because the DCCA did not have jurisdiction over the appellant's practice of law before the United States Equal Employment Opportunity Commission, the United States Merit Systems Protection Board**

See appellant's reliance as set forth in ¶ "iii" hereof.

      **v.** **and because appellant's related advertisement published in the Federal Times located in the State of Virginia and disseminated nationwide and internationally, which targets employees of the United States Government, the appellant's market place, and such related conduct is protected conduct, protected by the Supremacy Clause, the Government Contact Exception, and the Free Speech Clause of the United States Constitution**

See appellant's reliance as set forth in ¶ "iii" hereof.

      **vi.** **and because the appellant was released from the custody of the District of Columbia Department of Corrections, on June 7, 2004 by the trial Judge, the Honorable Noel Anketell Kramer, and the June 7, 2004 release order was never vacated or otherwise legally nullified,**

The appellant relies upon the Order issued by Judge Noel Anketell Kramer dated June 7, 2004, releasing the appellant from custody with respect to all issues pertaining to the four charges.

### vii.    and because the appellant was denied a fair trial

The appellant relies upon appellant's Amended Petition for Rehearing En Banc.

### viii.    and because the appellant was denied a fair appeal,

The appellant relies upon appellant's Amended Petition for Rehearing En Banc and the exhibits listed and attached to this motion.

### ix.    and because the appellant was transferred to the State of Virginia in violation of the Extradition Act, the Compact Act, and Appellant's Substantive Constitutional Procedural Rights.

The appellant relies upon the Criminal Extradition Act, the Compact Act, and the appellant relies upon, The appellant relies upon the Order issued by Judge Noel Anketell Kramer dated June 7, 2004, releasing the appellant from custody with respect to all issues pertaining to the four charges.

### x.    and because the appellant was denied counsel at sentencing.

The appellant relies upon Amended Petition for Rehearing En Banc *Id.* At 13. See also, *Irving v. Hargett,* 59 F.3d 23, 30 (5th Cir. 1995).

## DENIAL OF RIGHT TO PROCEED PRO SE

21.    The actions of the Court in refusing access to appellant's files, clients' files and pending case so appellant could prepare this case operated as prohibiting from proceeding pro se.[18]

## VIOLATION OF RIGHT TO COUNSEL OF CHOICE

22.    Appellant was denied counsel of choice when the court denied the Motion to Terminate Cynthia Nordone.  See *U.S. v. Romano*, 849 F.2d 812, 820 (3rd Cir. 1988) (Pro se reversal error because court appointed counsel over defendant's objection after revoking defense's right to pro se representation); *U.S. v. Musa*, 220 F.3d. 1096, 1102 (9th Cir. 2000)(Reversible error moved the Court subject to defense counsel denying simply because the Court finds the current counsel to be adequate. See *Ful Minante*, 499 U.S. at 310-11, See also *McKaskale v. Wiggins*, 465 U.S. 468, 177 N. 8 (1984), Denial of rights to proceed pro se not subject to harmless error analysis but requires reversal pro se); C.E.D. *U.S. v. Betantouri-Hrretuche*, 933 F.2d. 89, 94 (1st Cir. 1991) ("Denial of Constitutional rights of self representation constitutes more than harmless error"); *Wilson v. Walker*, 204 F.3d 33, 37 (2nd Cir. 2000) denial of rights of self-representation is not subject to harmless error analysis and thus requires automatic reversal); *U.S. v. Sebbs*, 281 F.3d. 109, 120-121 (3rd Cir. 2002)

## APPOINTED COUNSEL CLEARLY SECRETLY REPRESENTED THE DC BAR AND THE DISTRICT OF COLUMBIA COURT OF APPEALS JUDGES

---

[18] See *Ful Minante*, 499 U.S. at 310-11, See also *McKaskale v. Wiggins*, 465 U.S. 468, 177 N. 8 (1984), Denial of rights to proceed pro se not subject to harmless error analysis but requires reversal pro se); C.E.D. *U.S. v. Betantouri-Hrretuche*, 933 F.2d. 89, 94 (1st Cir. 1991) ("Denial of Constitutional rights of self representation constitutes more than harmless error"); *Wilson v. Walker*, 204 F.3d 33, 37 (2nd Cir. 2000) denial of rights of self-representation is not subject to harmless error analysis and thus requires automatic reversal); *U.S. v. Sebbs*, 281 F.3d. 109, 120-121 (3rd Cir. 2002)

**KRAMER, WAGNER,  AND THE UNITED STATES ATTORNEY AT THE SAME TIME IT WAS OPERATING UNDER AN APPOINTMENT TO REPRESENT THE APPELLANT ON APPEAL, THESE MULTIFACITED REPRESENTATIONS CONSTITUTE A CONFLICT OF INTEREST**

23.    The appellant's appointed appeal counsel was encumbered by a conflict of interest. When she acted to represent interest that conflicted with the appellant's whom had opposing interest See *Reynolds v. Chapman*, 253 F.3d 1337, 1347 (11th Cir. 2001); *U.S. v. Weaver*, 265 F.3d 1074, 1077(D.C. Cir. 2001) (conflict of interest because defendant's counsel represented codefendants, whose interests were adverse to those of defendant).

24.    *See Cuyler*, 446 U.S. at 348; see, e.g., *U.S. v. Schwarz*, 283 F.3d 76, 94 (2d Cir. 2002) (conflict of interest affected performance because counsel failed to pursue plausible alternative strategy that would have exculpated defendant but inculpated member of organization that counsel represented in related civil case); *U.S. v. Tatum*, 943 F.2d 370, 378-79 (4th Cir. 1991).

WHEN APPOINTED COUNSEL FAILED TO FILE POSTCONVICTION MOTIONS DIRECTED BY THE APPELLANT INCLUDING DC CODE §23-110 FOR RELEASE, AND MOTION CHALLENGING THE CONSTITUTIONALITY OF THE DCCA'S ENFORCEMENT OF RULE 49 AGAINST THE APPELLANT A PUBLIC MEMBER IN THE ABSENCE OF A STATUTE, APPELLANT'S APPOINTED COUNSEL WAS INEFFECTIVE

25.    See. e.g., *Baldayaque v. U.S.,* 338 F.3d 145, 152 (2nd Cir. 2003). (counsel's failure to file post-conviction motion to vacate despite being directed to by defendant "violated a basic duty of an attorney.

WHEN APPOINTED COUNSEL FAILED TO RAISE THE OBVIOUS ISSUE OF VIOLATION OF EXTRADITION TREATY, COMPACT ACT, WHEN JUDGE KRAMER ISSUED A RELEASE ORDER, SUPPRESSED IT, AND FACILITATED THE TRANSFER OF THE APPELLANT TO VIRGINIA AFTER APPELLANT PROTESTED ANY TRANSFER AND DEMANDED EXTRADITION HEARING, AND WHEN APPOINTED COUNSE FAILED TO RAISE THE ISSUE OF DENIAL OF COUNSEL AT SENTENCING, COUNSEL WAS INEFFECTIVE

26.    Appellant's appointed appeal counsel's failure to raise obvious and significant

issues was ineffective assistance because it was without legitimate strategic purpose);

*Carter v. Bowersox*, 265F.3d 705, 715-16 (8th Cir. 2001) (appellate counsel's failure to

discover instructional error and raise due process claim on appeal was ineffective assistance

because at least 1 juror was uncertain about defendant's guilt); *Delgado v. Lewis*, 223 F.3d

976, 980-82 (9th Cir. 2000) (counsel's failure to raise any arguable issues in appellate brief

was ineffective assistance); *Banks v. Reynolds*, 54 F.3d 1508, 1515-16 (10th Cir. 1995)

(counsel's failure to raise issues of trial counsel's conflict of interest and prosecution's

failure to provide exculpatory material was ineffective assistance because claims were

"clearly meritorious" and defendant prejudiced by counsel's error); *Eagle v. Linahan*, 279

F.3d 926, 943 (11th Cir. 2001)

THE CHIEF JUDGE AND THE PER CURIAM PANEL DEPRIVED THE APPELLANT
OF RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND RIGHT TO PROCEED
PRO SE, WHEN IT FAILED TO REVIEW ACTUAL AND/OR POTENTENTIAL
CONFLICT OF INTEREST ARTICULATED BY THE APPELLANT WHICH
APPARENTLY AFFECTED APPOINTED COUNSEL'S PERFORMANCE

27.    A trial court has a limited duty of avoid potential conflicts of interest. [1597] The

court must initiate an inquiry if it knows or reasonably should know that a potential conflict

exists.[1598]

---

[1597] See Cuyler, 446 U.S. at 346-47
[1598] See *Holloway v. Ark.*, 433 U.S. 475, 484-85 (1978) (court's failure to inquire into
conflict of interest after defense counsel's pretrial warnings of conflict violated right to
effective assistance of counsel because court has duty to avoid potential conflicts); see,
e.g., *Harris v. Carter*, 337 F.3d 758, 761-62 (6th Cir. 2003)  failure of court to hold
evidentiary hearing to determine whether conflict of interest adversely affected defendant
due to conversations with codefendant's counsel merited remand).  But see *Cuyler*, 446
U.S. at 347 (no duty to inquire into conflict because provision of separate trial for
codefendants reduced potential for

(11th Cir. 2001) (counsel's conflict of interest affected performance because prevented

counsel from raising reasonable defenses in defendant's favor); *U.S. v. Weaver*, 265 F.3d

1074, 1077 (D.C. Cir. 2001 (conflict of interest affected performance because it led counsel

to refrain from requesting substantial assistance motion). See *Strickland*, 466 U.S. at 692

(right to effective assistance of counsel impaired when defense counsel operates under

conflict of interest because "counsel breaches the duty of loyalty, perhaps the most basic of

counsel's duties").

### APPOINTED APPEAL COUNSEL ENTIRELY FAILED TO SUBJECT THE PROSECUTION'S CASE TO MEANINGFUL ADVERSARIAL TESTING AND THE ADVERSARIAL PROCESS AS A RESULT BECAME PRESUMPTIVELY UNRELIABLE

28.    Appellant's appointed counsel abandoned the appellant's pre-trial issues and 198

assignment of errors as well as arguments the appellant made challenging the prosecution

case, sufficiency of evidence, prosecutorial misconduct, acts of entrapment, violation of the

Government Contact Exception, enforcement of DC Ct. App. R 49 through order 18 which

conflict with EEOC laws, 29 CFR §1614.605, and Virginia law, (appellant's home state)

Virgina UPL, UPR 9-102 (See Amended Pet. For Rehearing En Banc at 9-10) operates as a

conflict and such enforcement is pre-empted by rights afforded appellant through the

Supremacy Clause.  **See Appellant's pro se Appellant's Brief filed on November 16,**

**2005, at 1-50.  See Appellant's Supplemental Brief (Part II) In Support of Petition for**

**Writ of Habeas Corpus** (styled "Plaintiff's Supplemental Brief (Part II) In Support of

Petition for Writ of Habeas Corpus) filed in *Simon Banks v. Steven Smith,* Case No.

04cv00903, RCL, DCCA No. 02-BG-1374, USDC DC) *attached to "Appellant's Pro Se

Motion for Emergency Medical Release and/or In the Alternative Home Detention, filed on

July 22, 2005, in the instant appeal**.***

29.    **See** *Cronic,* 466 U.S. at 659; **See,** *e.g., Rickman v. Bell,* 131 F.3d 1150, 1156-60 (6th Cir. 1997). (counsel abandonment of defense interest, arbitrarily abandoning appellant's assignment of errors, "constitute denial of assistance of counsel because prejudiced presumed from abandonment such that the court need not establish actual prejudice," *Griffin v. U.S.,* 109 F.3d 1217, 1219 (7th Cir. 1997), *McGurk v. Stenberg,* 163 F.3d 470, 473 (8th Cir. 1998),  counsel's failure to discover that defendant had right to jury trial and inform defendant of that right, warranted presumption of prejudice; *Cargle v. Mullin,* 317 F.3d 1196, 1211 (10th Cir. 2003).  *Ferretta v. California*, 422 U.S. 806 (1975

**WHEREFORE,** appellant pray that the Court En Banc setaside the decision of the per curiam panel, and make a decision on the record, and/or provide the appellant with an evidentiary hearing.  And further, that this Honorable Court dissolve Order 18 and the injunction.

_____
**Simon Banks, J.D.**
**Appellant Pro Se**
P.O. Box 17052
Alexandria, VA. 22302
703 965-5637
drsbanks@msn.com

CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading was mailed, postage prepaid, and/or sent via electronic mail, this 27th day of July, 2007, to:

John P. Mannarino, Esq. AUSA
555 4th Street, N.W.
Washington, D.C. 20305
Tele# 202 514-0065
Jeffrey A. Taylor, Esq. AUSA
W. McLeese, III, AUSA
Lisa Schertler and
John D. Griffith
John.mannarino@usdoj.gov,
Jeffrey.taylor@usdoj.gov,
Roy.mcleese@usdoj.gov
lisa.schertler@usdoj.gov,
john.griffith@usdoj.gov

_____
**Dr. Simon Banks, J.D.**
**P.O. Box 17052**
**Alexandria, Va. 22302**
**703 965-5637**
**drsbanks@msn.com**

<div align="center">

**IN THE DISTRICT OF COLUMBIA
COURT OF APPEALS**

</div>

RECEIVED

2008 JAN 29 ℗ II: 51

No. 07-SP-1342                                             SP1008-4

DISTRICT OF COLUMBIA

IN RE:  SIMON BANKS                          January 29, 2008

<div align="center">

**APPELLANT'S PETITION FOR REHEARING EN BANC**

</div>

Come now Simon Banks, Appellant and submit Petition for Rehearing En Banc
pursuant to Rule 40 of District of Columbia Court Rules.

This is an appeal from an order issued by the per curiam panel on January 14,
2008, and upon a decision issued by the designated Superior Court Judge, on November
21, 2007, designated on May 23, 2006 to reach an adjudicatory disposition upon the
appellant's emergency motion filed on April 12, 2006, and supplemented on April 21,
2006 through appellant's response to the show cause order of the designated judge issued
on June 7, 2006 directing the appellant to show cause why his motion for collateral relief
pursuant to D.C. Code §23-110, seeking release and correction of sentence, *inter alia*, is
not moot as the result of the appellant's release.

This is a case that presents exceptional circumstances and en banc review is
appropriate in cases of "exceptional importance."

The integrity of the Court is in issue and the need for appellate judges and
designated Superior Judges whom serve as appellate judges to avoid the appearance of
impropriety, to provide a fair trial and not unduly delay dispositions requiring collateral
review for purposes of waiting for the appellate court to decide issues before it in order to
adopt the decision of the appellate court as a substitute for reaching adjudicatory
dispositions upon constitutional issues in a collateral D.C. Code §23-110 habeas petition
proceedings, thereby depriving the habeas petitioner of due process and equal protection

of the laws.

## APPELLANT'S ENTITLE MENT TO BE RELEASE
## ON JUNE 7, 2004, BUT WAS UNCONSTITUTIONALLY
## IMPRISONED FROM JUNE 7, 2004 THROUGH APRIL 28, 2006

There exist a further critical issue of exceptional importance, the constitutional

issue that was left unresolved by the designated §23-110 Superior Court Judge, and the

per curiam panel, the issue of whether the Appellant was entitled to be released on June

7, 2004 based upon the order of Judge Noel Kramer releasing the appellant without

condition, which was never vacated nor rendered moot, whether the Appellant was

unconstitutionally detained and/or imprisoned from June 7, 2004 through April 8, 2006 in

violation of the Constitution.

The decision of the trial court and the per curiam panel adopting the decision of

the trial court, at 4¶2 is in conflict with the decisions of this Honorable Court which

affords the right of a hearing in connection with the issues set forth in the Appellant's 23-

110 emergency petition for release and for correction of sentence via D.C. Code §23-

110(g).  Some of the decisions of the 23-110 judge and the per curiam panel, conflict

with the following decisions: which provide for collateral review of motions and

constitutional issues contained therein filed pursuant to D.C. Code §23-110, coupled with

a right to an evidentiary hearing.  *Dobson v. United States*, 711 A.2d 78, 83 (D.C. 1998);

*Ramsey v. United States*, 569 A.2d 142, 147 (D.C. 1990). See also, *Cosio v. United*

*States,* 98 cf-1906 & 02-C0-1453 (June 21, 2007), *Pearsall v. USA (2001), Williams v.*

*United States,* 783 A.2d 598 (DC 2001), *Craig v. Williams fn4 at 7; Evitts v. Lucy*, 387,

396-97 (1985); * *Shepard v. United States,* 533 A.2d 1278 (1987);  *Swain v. Pressley,*

430 U.S. 372 (1977),  See also, D.C. Code §23-110 (g), et seq.

Where the trial court opined that the appellant's relief for the over-detention is exclusively left to the civil trial court and not the 23-110 habeas court. This decision conflicts with the court's decision in because Congress created post-conviction remedy in D.C. sentencing court, habeas petition may not be entertained elsewhere);" cf Neal *v. Director, D.C. Dep't. of Corrections,* 684 F.2d 17, 20 (D.C. Cir. 1982) (per curiam) See also, D.C. Code §23-110 (g), et seq.

A further exceptional issue of importance is whether a designated Superior Court Judge, designated to adjudicate a motion pursuant to D.C. Code §23-110, may pick and choose which issues it will avoid ruling upon and which issues it will adjudicate and leave undecided issues it think may not have been assigned to it pursuant to D.C. Code §23-110 because of the unresolved, perceived limited assignment, without violating the appellant's right to a fair trial, and constitutional right to due process and equal protection of the laws. See the §23-110 trial court's decision at 3 through 4, and the conclusive presumptions at 4¶2.

Whether the appellant had standing to litigate the allegations of constitutional deprivations listed in the appellant's emergency motion for release and correction of sentence, inter alia. The appellants allegations of constitutional deprivation exceed the issue of release addressed by the 23-110 designated judge. In the instant case the per curiam panel opined, in its decision of January 14, 2008, No. 07-SP-1342, IN RE SB that the appellant lack standing and/or that the issues are moot or barred by res judicata, citing *Valentine v. Elliott,* 819 A.2d 968, 1003 (D.C. 2003); accord, In re C.T., 724 A.2d 590 (D.C. 1999)(dismissing for lack of standing because appellant had served his sentence and been released); *Holey v. United States,* 442 A.2d 106, 107 (D.C. 1981) and *Leslie v.*

3

*LaPrade,* 724 A.2d 1228, 1230 (D.C. 1999)  Clearly these decisions are not applicable to

the appellant and are not dispositive of the case in chief because they are based upon

conclusive presumptions adopted by the per curiam panel, without any specific findings

of fact or conclusions of law, and are otherwise arbitrary and based upon conclusive

presumptions not supported by a preponderance of evidence in the record.

Whether the decision of the §23-110 designated judge and the per curiam panel

that adopted it, arbitrarily and abused its discretion and denied the appellant a hearing on

the issue of ineffective counsel, arbitrarily and by conclusive presumption, fn 1 at 3 and

4.  This decision is in conflict with the court's decisio

In the case of *Wayne Lanton v. United States*, Nos. 99-CM-245 and 00-CO-487

(August 16, 2001) the Court held "In light of the foregoing provision, there is a

presumption that a trial court presented with a § 23-110 motion alleging the ineffective

assistance of counsel should conduct a hearing." *Dobson v. United States*, 711 A.2d 78,

83 (D.C. 1998)(citation omitted).  In order to uphold the denial of a § 23-110 motion

without a hearing, we must be satisfied that "under no circumstances could the petitioner

establish facts warranting relief." *Ramsey v. United States*, 569 A.2d 142, 147 (D.C.

1990(quoting *Fontaine v United States*, 411 U.S. 213, 215 (1973)).  The determination

whether or not to hold a hearing is discretionary, see, e.g., Webster v. United States, 623

A.2d 1198, 1206 (D.C. 1993), but "because ss 23-110 is a remedy of virtually last resort,

any [non-frivolous] question whether a hearing is appropriate should be resolved in the

affirmative." *Gibson v. United States*, 388 A.2d 1214, 1216 (D.C. 1978 (per curiam).

The suppressed evidence contained in the Motion as well as the denial of 98

assignment of errors that the appellant seeks to produce upon the record at a hearing on

4

the merits are material to the issues and allegations set forth in the appellant's emergency

DC Code 23-110 Motion.  Based upon these facts the appellant is entitled to review on

the merits at the appellate level.   Wright v. United States, 387 A.2d 582, 587 (D.C.

1979)(citing *Thompson v United States,* 88 U.S. App. D.C. 235, 236, 188 F.2d 652,

653(1951)).

      Whether the court erred when it failed to provide the appellant a hearing on the

issue of ineffective/conflicted counsel whom the appellant at all times relevant alleged

was a co-prosecutor, and arm of the state, and that her conduct was worst than mere

ineffective counsel, and worst than the shocking and professionally outrageious behavior

of defense counsel in *Rickman v. Bell,* 131 F.3d 1150, 1156-1157 (6th Cir. 1997), who

rather than defending his client acted as a "second prosecutor," and effectively the legal

equivalent of having no counsel at all under *United States v. Cronic*, 466 U.S. 648

(1984), sufficient to constitute constructive denial of counsel. Moreover, the appellant

copied this court with his complaint against Attorney Cynthia Nordone alleging that her

actions of waiving his affirmative defenses, and 98 assignment of errors, were acts taken

by Nordone to sabotage his appeal.  These are serious red flags that require strict scrutiny

and investigation.

      23-110 The appellant's right to effective assistance of counsel was violated and

the appointed appellant's counsel, that the court appointed and forced upon the appellant

was constitutionally ineffective under the standard set forth in *Strickland v. Washington*,

466 U.S. 668 (1964)

      Section 23-110.  **The scope of §23-110 is broader than that which is**

**contemplated by the trial court.**

The DCCA opined that the language of the statute and its past decisions make clear that § 23-110 as a vehicle for attacking a sentence, is not limited to such claims. The trial court abused its discretion when it failed to conduct an evidentiary hearing on the appellant's motion and the various constitutional claims. See *Little v. United States,* 748 A.2d 920, 922 (D.C. 2000). There is a presumption in favor of such a hearing. See *Webster v. United States*, 623 A.2d 1198, 1206 (D.C. 1993); Ready v. United States, 620 A.2d 233, 234 (D.C. 1993).

The D.C. Court of Appeals has specifically identified § 23-110 claims that do not merit hearings: (1) vague and conclusory allegations; (2) palpably incredible claims; and (3) allegations that would merit no relief even if true. See *Dobson v. United States*, 711 A.2d 78, 83 (D.C. 1998); *Ramsey v. United States*, 569 A.2d 142, 147 (D.C. 1990). Clearly, based upon the record, the trial court could not rule that the appellant's appeal counsel did not perform deficiently under the standard set forth in *Strickland v Washington*, 466 U.S. 668 (1984)

On the issue of whether the trial court abused its discretion by not providing the appellant with a hearing on the issue of ineffective counsel connected with the appellant's emergency Motion pursuant to DC Code §23-110 for release and correction of sentence, inter alia.

In the case of *Wayne Lanton v. United States*, Nos. 99-CM-245 and 00-CO-487 (August 16, 2001) the Court held "In light of the foregoing provision, there is a presumption that a trial court presented with a §23-110 motion alleging the ineffective assistance of counsel should conduct a hearing." *Dobson v. United States*, 711 A.2d 78, 83 (D.C. 1998)(citation omitted). In order to uphold the denial of a ss 23-110 motion

without a hearing, we must be satisfied that "under no circumstances could the petitioner establish facts warranting relief." *Ramsey v. United States*, 569 A.2d 142, 147 (D.C. 1990(quoting *Fontaine v United States*, 411 U.S. 213, 215 (1973)). The determination whether or not to hold a hearing is discretionary, see, e.g., Webster v. United States, 623 A.2d 1198, 1206 (D.C. 1993), but "because ss 23-110 is a remedy of virtually last resort, any [non-frivolous] question whether a hearing is appropriate should be resolved in the affirmative." *Gibson v. United States*, 388 A.2d 1214, 1216 (D.C. 1978 (per curiam).

Jurisdiction of the trial court, the designated D.C. Code §23-110 judge is broader than that which has been articulated and which is contemplated by the 23-110 designated judge and accepted by the per curiam panel.

**Section 16-1901(a) provides, in relevant part**:

A person committed, detained, confined, or restrained from his lawful liberty within the District [of Columbia] ... may apply by petition to the appropriate court, or a judge thereof, for a writ of habeas corpus, to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into.

**D.C. Code s 16-1901(a) (1981).**

**Section 23-110 provides, in relevant part:**

A prisoner in custody under sentence of the Superior Court [of the District of Columbia] claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to

7

collateral attack, may move the court to vacate, set aside, or correct the sentence.... An

application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply

for relief by motion pursuant to this section shall not be enter- tained by the Superior

Court or by any Federal or State court if it appears that the applicant has failed to make a

motion for relief under this section or that the Superior Court has denied him relief,

unless it also appears that the remedy by motion is inadequate or ineffective to test the

legality of his detention. D.C. Code s 23-110(a), (g) (1981).

    **WHEREFORE**, the appellant pray that this Honorable Court grant the

appellant's Petition for En Banc Review.

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
703 965-5637
Email: drsbanks@msn.com

<center>CERTIFICATE OF SERVICE</center>

    I, hereby certify that a copy of this pleading was mailed, postage prepaid, and/or
sent via electronic mail, this 29th day of January, 2008, to:

John P. Mannarino, Esq. AUSA
555 4th Street, N.W.
Washington, D.C. 20305
Tele# 202 514-0065
Jeffrey A. Taylor, Esq. AUSA
W. McLeese, III, AUSA
Lisa Schertler and
John D. Griffith
John.mannarino@usdoj.gov,
Jeffrey.taylor@usdoj.gov,
Roy.mcleese@usdoj.gov
lisa.schertler@usdoj.gov,
john.griffith@usdoj.gov

<center>8</center>

**Dr. Simon Banks, J.D.**
**P.O. Box 17052**
**Alexandria, Va. 22302**
**703 965-5637**
**drsbanks@msn.com**

Phone: 703 379-8724
Fax: 703 379-7860

# Fax to U.S. Cong.

| | | | |
|---|---|---|---|
| **To:** | Hon. J. Istook, Jr. | **From:** | Dr. Simon Banks |
| **Fax:** | 202 225-8044 | **Date:** | May 17, 1999 |
| **Phone:** | 202 225-5338 | **Pages:** | 6 |
| **Re:** | FY2000 D.C. Budget | **CC:** | Rep. Moran, Davis, Conyers, Hyde, Barney Frank, Mica, Burton, Senate Judiciary Committee, House Judiciary Committee |

X    **Urgent**        **For review**    **Please Comment**        ☐ **Please Reply**        ☐ **Please R**

•**Comments:**

## This is to request permission to provide testimony regarding the District of Columbia Court of Appeals FY2000 budget. Re. Judicial Corruption.

My request is triggered by judicial corruption, fraud, waste, abuse; misappropriation of federal funds, obstruction of justice, and cover up of obstruction of justice, bribery, extortion, perjury, subornation of perjury and misuse of official judicial position for purposes of enriching the law firms connected with the District of Columbia Court of Appeals.

Previously, I, a former chief hearing examiner and administrative law judge, filed a petition for resolution of impeachment, for an F.B.I investigation into misappropriation of federal funds, discrimination with respect to the use of federal funds, against court officials and judges whom have knowingly, intentionally, acted outside the scope of their jurisdictional authority for self-serving reasons.

The D.C. Court of Appeals needs oversight. If one filed a complaint against a federal judge, it would go to a three-judge panel. Any complaint against a D.C. Court of Appeals judge or its employees would be immune and would go directly to an entity that is overseen by the D.C. Court of Appeals. This include the D.C. Judicial Tenure Commission and the Administrative Offices of the Court and the D.C. Bar Counsel. Moreover, the United States Court of Appeals for the District of Columbia lack jurisdiction to review any misconduct committed by D.C. Court judges or its employees. The U.S. Department of Justice lacks jurisdictional authority.

**2.51 Review generally available only by petition for certiorari.** As set forth in §2.22, the Court Reform Act made final judgments and decrees of the D.C. Court of Appeals directly reviewable by the Supreme Court in accordance with 28 U.S.C. §1257. **See** D.C. Code §11-102 (1981). Congress also amended 28 U.S.C. §1257 by adding a sentence which provides:

For purposes of this section, the term "highest court of a state" includes the District of Columbia Court of Appeals. **See** <u>Key v. Doyle</u>, 434 U.S. 59, 64 (19777).   Title 28 U.S.C. §1257, as amended by the Court Reform Act, provides:

§1257.  State courts; appeal; certiorari
Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court



*Judge Spottswoods Robinson, District of Columbia Circuit*

1974 SIMON BANKS WITH MR. & MRS.
JOHN EHRLICHMAN - WATERGATE
LEGAL DEFENSE TEAM

SIMON BANKS HARRY S. TRUMAN
FORMER PRESIDENT

May 17, 1999

*Simon Banks,*
**Dr. Jurisprudence Law**
*Former Administrative Law Judge & Hearing Examiner*

**The Honorable Henry J. Hyde**
**Chairman, Committee On the Judiciary**
**United States House of Respresentatives**
**2138 Rayburn HOB**
**Washington, D.C.  20515-6216**

## MEMBER WATERGATE LEGAL DEFENSE TEAM

## SECOND PETITION FOR RESOLUTION OF IMPEACHMENT
### <u>AND FOR CENSURE</u>

REQUEST FOR INVESTIGATION BY THE  FBI AND GAO OFFICE OF SPECIAL
INVESTIGATION INTO <u>CHARLES F.C. RUFF'S</u> MISUSE OF FEDERAL
FUNDS WHILE DC CORPORATION COUNSEL , TO REPRESENT THE 500-MEMBER LAW  FIRM OF D.C COURT OF
APPEALS'  PROBONO ATTORNEY  STUART  PIERSON, AND <u>INTO ATTORNEY STUART PIERSON'S  USE OF  HIS
JUDICIAL POSITION TO  ENRICH HIMSELF AND HIS 500-MEMBER LAW FIRM,  DAVIS WRIGHT TREMAINE
AND HOGAN & HARTSON,  THROUGH WITNESS TAMPERING,   SUBORNATION OF PERJURY,   BRIBERY;
OBSTRUCTION  OF JUSTICE,  RACIAL DISCRIMINATION,  AND TO INVESTIGATE  CORRUPTION</u>;

THIS IS A COMPLAINT AND PETITION  FOR CENSURE AND TO INVESTIGATE
REPRISAL AGAINST COMPLAINANT FOR PETITIONING CONGRESS FOR REDRESS,
<u>AGAINST ERIC HOLDER,  SUPERIOR COURT JUDGE RICHARD A. LEVIE,  FOR ABUSE
OF AUTHORITY TO COVER UP:  BRIBERY,  MISUSE OF FEDERAL FUNDS,  PERJURY,
SUBORNATION OF PERJURY,   RESTRAINT  IN  TRADE,  JUDICIAL CORRUPTION,  AND JUDGE LEVIE'S ACTS
TO ENRICH HIS FORMER LAW FIRM HOGAN & HARTSON,  AND EEOC EMPLOYEE SUSAN REILLY,</u>
THROUGH THE SMOKESCREEN AND DISGUISE OF SELECTIVE CENSORSHIP AND PRETEXTUAL INUNCTIONS

Congress made a mistake when it authorized the D.C. Court of Appeals to function as the highest court of a state when it is not a state, thereby requiring appeals and complaints against it to go directly to the Supreme Court.   The Supreme Court cannot oversee a single state court and any action regarding a state court must be by appeal – i.e. no oversight at all.

Neither the Constitution, our forefathers, nor  the U.S. Congress, intended to render D.C. Court of Appeals Judges, free from any and all oversight, when the Congress passed The District of Columbia Court of Appeals is an Article 1 Court.  It was created by Congress pursuant to Congress' plenary power under Article 1 of the Constitution to legislate for the District. **See** D.C. Code §11-101(2)(1981), 384 A.2d 412, 420-421 (D.C. 1978).  Although not constitutionally bound to hear only "cases" and "controversies" as are courts created under Article III, the D.C. Court of Appeals is statutorily so bound. **See**  D.C. Code §11-705(b)(1981); <u>Lee v. District of Columbia Board of Appeals and Review</u>, 423 A.2d 210, 216-217, n.13 (D.C. 1980). **See also** <u>Banks v. Ferrell</u>, 411 A.2d 54, 55-56 (D.C. 1979).  Moreover, despite the lack of life tenure and salary protection under Article III, judges of the Superior Court and the D.C. Court of Appeals are nevertheless "fully competent to decide federal constitutional issues ***." <u>Swain v. Pressley</u>, 430 U.S. 372, 383 (1977).

As of the effective date of the Court Reform Act, the Superior Court has no jurisdiction to try persons charged with United States Code offenses.  **See** <u>Thompson  v. United States</u>**, 548 F.2d 1031, 1037 (D.C. Cir. 1976).**
Judgments of the D.C. Court of Appeals are no longer reviewable  by the United States Court of Appeals for the District of Columbia Circuit, but are reviewable only the United States Supreme Court. <u>District of Columbia v. Feldman</u>, 460 U.S.  462, 464 (1983).



Doyle, 434 U.S. 59, 64 (19777).  Title 28 U.S.C. §1257, as amended by the Court
Reform Act, provides:

§1257.  State courts; appeal; certiorari
Final judgments or decrees rendered by the highest court of a
State in which a decision could be had, may be reviewed by the
Supreme Court as follows: (1) By appeal, where is drawn in
question the validity of a treaty or statute of the United States and
the decision is against its validity. *(2) By appeal, where is drawn
in question the validity of a statute of any state on the ground
of its being repugnant to the Constitution, treaties or laws of
the United States, and the decision is in favor of its validity.* (3)
By writ of certiorari, where the validity of a treaty or statute of the
United States is drawn in question **or where the validity of a
State statute is drawn in question on the ground of its being
repugnant to the Constitution, treaties or laws of the United
States, or where any title, right, privilege or immunity is
specially set up or claimed under the Constitution, treaties or**

# [CONGRESS MUST ESTABLISH OVERSIGHT OVER THE DC COURT OF APPEALS]

statutes of, or commission held or authority exercised under, the United States. *For the purposes of this section, the term "highest court of a state" includes the District of Columbia Court of Appeals.* [Emphasis added]

## FROM 1985 TO THE PRESENT THE DISTRICT OF

## COLUMBIA COURT OF APPEALS CONSPIRED WITH THE

## COLUMBIA BAR TO

## CIRCUMVENT FEDERAL LAWS AND FEDERAL CONSTITUTIONAL RIGHTS

## BY USING ITS RULES TO SELECTIVELY AND UNCONSTITUTIONALLY

## REGULATE PRACTICE BEFORE FEDERAL ADMINISTRATIVE AGENCIES

## AND INTERSTATE COMMERCE, IN VIOLATION OF THE EQUAL PROTECTION CLAUSE

## AND, IN VIOLATION OF THE SUPREMACY CLAUSE, TO PROTECT A MONOPOLY

**Dr. Simon Banks, with Supreme Court Justice Thurgood Marshall**



**and U.S. Court of Appeals Chief**

*Judge Spottswoods Robinson, District of Columbia Circuit*

From 1985 to the present, the District of Columbia Court of Appeals, [hereinafter "DCCA"] after realizing that it did not have rules to cover authorized unlicensed practice before administrative agencies of the District of Columbia and of the United States, engaged in a conspiracy to enact rules to govern the general public in its practice before administrative agencies that do not require a license to practice law, **in the absence of a statute.**

Pursuant to the conspiracy the DCCA, rather than request that the legislature enact a statute, the DCCA, commenced secret rule-making activities, specifically designed to protect all licensed attorneys throughout the United States from enforcement of its rules governing practice before administrative agencies of the United States by exempting all attorneys not license to practice law in the District of Columbia.



Pursuant to the conspiracy the DCCA singled out non-licensed practitioners that competed with District of Columbia Bar members before administrative agencies of the United States and the District of Columbia Government. These federal and state agencies do not require a license to practice law as a condition for practice.



Pursuant to the conspiracy the DCCA conspired to use its judicial influence and its attorneys whom were also attorneys for the District of Columbia Government, to use their power to influence administrative agencies to enact rules repealing the policies, practices and procedures of affording non-licensed individuals the right to practice before administrative agencies of the District of Columbia, by requiring a license where no license were previously required. DCCA imposed its local rules selectively to undermine the laws of the United States through selective use of its power to issue speech-restrictive injunctions, when and while it issued a decision acknowledging that its Rule 49 does not cover or have jurisdiction over such practice.

6

Pursuant to the conspiracy the DCCA conspired to utilize attorneys of the DC Bar whom were employed as administrators in District of Columbia Regulatory Agencies, to use their respective rule-making authority to enact rules that substantially mirror-imaged the District of Columbia Court of Appeals Rule 49 on Unauthorized Practice of Law, in particular its provisions that a) exempt all attorneys not licensed in the District of Columbia, and b) established special, selective classifications for unlicensed individuals and exempt all attorneys from these selective classifications, even though these attorneys not licensed in the District of Columbia engage in like and similar practice before administrative agencies that do not require a license to practice law.

Pursuant to the conspiracy, when and while DCCA engaged in rule-making activities to govern authorized unlicensed practice before administrative agencies, Banks, the complainant and undersigned, was singled out for selective enforcement of DCCA's Rule 49 on Unlicensed Practice of



Law, which contained various vague speech restrictions, because Banks, a former administrative law judge, was successful in attracting clients and competing against licensed members of the DC Bar. Banks' success was enhanced by Banks previous employment as a Hearing Examiner and Administrative Law Judge.

Members of the Bar whom Banks competed against complained that Banks was regularly bringing complaints against their clients, their administrative agencies, and law firms themselves for discrimination and for unlawful personnel practices.

DCCA conspired to nullify Dr. Banks' competitive advantage by arbitrarily enjoining Banks from using his former title Administrative Law Judge until Banks become a licensed member of the DC Bar. DCCA contend that such use mislead the lay public. However DCCA exempted all non-DC licensed attorneys from its prior restraint and censorship of protected speech.

## PURSUANT TO THE CONSPIRACY THE DCCA ENGAGED

### IN JUDICIAL CORRUPTION, AND THE CONDONMENT OF

## FRAUD, BRIBERY, PERJURY, SUBORNATION OF PERJURY





## OBSTRUCTION OF JUSTICE, ETHICAL MISCONDUCT AND VIOLATION OF OATH OF OFFICE

## PURSUANT TO THE CONSPIRACY THE DCCA USED ITS SPECIAL STATUS AS THE HIGHEST STATE COURT OF A STATE AND THE LACK OF OVERSIGHT, TO COVER-UP JUDICIAL CORRUPTION AND THE CONDONMENT OF FRAUD, BRIBERY, PERJURY, SUBORNATION OF PERJURY OBSTRUCTION OF JUSTICE, ETHICAL MISCONDUCT AND VIOLATION OF OATH OF OFFICE



**Simon Banks, Chief Justice Warren Burger, Supreme Court**

While the Court Reform Act confers upon the District of Columbia courts a status similar to that of the courts of a state, the analogy is not perfect. **See** <u>Key v. Doyle</u>, supra, 434 U.S. at 64. The Supreme Court has held that a provision of the D.C. Code which is applicable only to the District of Columbia is not "a statute of any state" under 28 U.S.C. §1257(2). **See** <u>Palmore v. United States,</u> supra, 411 U.S. at 394-396. The Court has also held that, even though enacted by Congress, a provision of the D.C. Code is not a "statute of the United States" under 28 U.S.C. §1257(1)[1] **The result is that under only two unlikely circumstances can there be an appeal to the Supreme Court from a decision of the D.C. Court of Appeals: (1) where the D.C. Court of Appeals upholds a state statute against an attack based on the Constitution, a treaty or a federal law, or (2) where the D.C. Court of Appeals invalidates a "federal law other than a provision of the D.C. Code."** [2]

---

[1] <u>Key v. Doyle</u>, supra

[2] <u>Key v. Doyle</u>, supra, 434 U.S. at 68 n.14

Unless and until the Congress enact legislation providing for oversight of the District of Columbia Court of Appeals, it will continue to use its rule-making powers to substitute its rules for the laws of the legislature, and to enforce these rules, selectively while restricting the publication of these rules to licensed members of the DC Bar, thereby depriving the citizens of the District of Columbia and of the United States notice. These secret-restrictive publications operate to usurp the District of Columbia Publication Act which

requires all laws to be published in the District of Columbia Register.

Unless and until Congress enact legislation providing for oversight of the District of Columbia Court of Appeals, it will continue to enforce its rules as substitute for laws enacted by the legislature, selectively against the citizens of the District of Columbia Government.

DCCA exempted Banks' subordinate, Marie Johnson, who, in 1977 worked as a "hearing examiner" at the District of Columbia Rental Accommodations Office, from its speech restriction and injunction. Ms. Johnson, published a biographical sketch in 1983, subsequent to her appointment as Vice-Chair of the United States Merit Systems Protection Board, that referred to her employment with the District of Columbia Government as an "Administrative Law Judge." Ms. Johnson also advertised her position with the District of Columbia Office of Employee Appeals as an "Administrative Law Judge." Although her official position was "hearing examiner." *See also Nomination of Maria L. Johnson, Thursday, April 28, 1983. Hon. Ted Stevens, Presiding. Ms. Johson, at P3 of transcript of hearing provides that she was a hearing examiner with the District of Columbia Rental Accommodations Office. [RAO].* **See S.Hrg. 98-116, April 28, 1983.**

DCCA exempted from its speech restrictions, imposed selectively on Banks, hearing examiners of the District of Columbia Consumer & Regulatory Affairs Agency, whom, from 1991, advertised themselves as "Administrative Law Judges." On Friday, January 20, 1995 the DCRA further published in the DC Register, Vol. 42, No. 3, at page 23, that "hearing examiners" are administrative law judges.

The DCCA exempted from its speech restrictions, imposed on Banks, hearing examiners of the District of Columbia Office of Employee Appeals. These hearing examiners, without restriction, may use the title "administrative judge" and have used the title "administrative judge" notwithstanding the fact that their official personnel title is "hearing examiner."

On November 8, 1991, Warren M. Cruise, Executive Director of the DC Office of Employee Appeals changed the title of "Hearing Examiner" to "Administrative Judge" by simple memo, providing: "Decisions written on or after November 12, 1991 should reflect this change."

DCCA ignored, when it selectively enjoined Banks from using his former title "Administrative Law Judge," the ruling of the United States Civil Service Commission, when it enforced its speech censorship against Banks, which changed the title "Hearing Examiner" to "Administrative Law Judge in 1972," by regulation on August 19, 1972, 37 Fed. Reg. 1687, and by statute on March 27, 1978. **See 5 U.S.C. 3105.5372.**

**The DCCA, when it selectively enjoined Banks from using his former title "Administrative Law Judge," ignored Banks' certification issued by the District of Columbia Government, certifying Simon Banks as "Administrative Law Judge & Hearing Examiner, on February 21, 1980. MBOC No. 3495. Executed by Charlotte G. Chapman.**

The EEOC changed the title "Hearing Examiner" to "Administrative Judge" in 1987.

The DCCA, when it selectively enjoined Banks from using his former title "Administrative Law Judge," ignored the ruling of the Supreme Court in **Butz v. Economou**, 438 U.S. 478, that "Hearing Examiners" are "Administrative Law Judges."

The DCCA, when it selectively enjoined Banks from using his former title "Administrative Law Judge," ignored the ruling of the Honorable Chief United States Judge, Norma Holloway Johnson, that "Hearing Examiner" Lennox Simon, pursuant to the request of Charles F.C. Ruff, the DC Corporation Counsel, in Robert Lepelletier, Jr., et al v. Sharon Pratt Kelly, et al, C.A. 94-2245, citing *Butz v. Economou, supra.*

The above-referenced actions of the District of Columbia Court of Appeals were for purposes of establishing barriers and impediments to competition, and for purposes of protecting the monopoly market of the DC Bar to which each member of the DCCA belong.

The DCCA, when it selectively enjoined Banks from using his former title "Administrative Law Judge," ignored Banks' argument that the Sixth Edition of Black's Law Dictionary, at Page 46 which describe the title "Administrative Law Judge" as "..Formerly called "hearing officer," or "hearing examiner." "Adm. Procedure Act, 5 U.S.C.A. § 556.

The DCCA, when it selectively enjoined Banks from using his former title "Administrative Law Judge," Ignored Banks' argument that the Baron's Legal Law Dictionary, defines the

Otherwise, decisions of the D.C. Court of Appeals are reviewable by the Supreme Court only by writ of certiorari under 28 U.S.C. §1257(3).

The District of Columbia Court of Appeals is not bound to follow decisions of the United States Court of Appeals for the District of Columbia Circuit regarding local issues. See **M.A.P. v. Ryan**, 285 A.2d 310 (D.C. 1971).

Furthermore, the guidelines established by *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938) and its progeny are applicable in the District of Columbia. **See** Lee v. Flintkote Co, 593 F.2d 1275, 1278, n. 14 (D.C. Cir. 1979); Steorts v. American Airlines, Inc., 647 F.2d 194, 196-197 (D.C. Cir. 1981); **See** Doe v. Board of Professional Responsibility of D.C. Court of Appeals, 717 F.2d 1424 (D.C. Cir. 1983)(Where federal claims are dismissed, District Court may not properly invoke doctrine of pendent jurisdiction to decide novel and unsettled questions of District of Columbia Law.).

**2.3 Jurisdiction.**
**2.31 Appellate jurisdiction.** The general appellate jurisdiction of the D.C. Court of Appeals is set forth in D.C. Code §§11-721 and 11-722 (1981).

---

title "Administrative Law Judge" as formerly called "Hearing Examiner." Citing 5 U.S.C.A. §556.

The D.C. Court of Appeals selective exemptions from enforcement of its rules, are discriminatory, based upon racial discrimination, sexual discrimination, and based upon class-based disparate treatment, for purposes of perpetuating a monopoly at the federal market place, where the DC Court of Appeals has no jurisdictional authority.



**2.31. Final Orders.**  With three notable exceptions,[3] the D.C. Court of Appeals is required by §11-721 to hear appeals from all final orders and judgments of the Superior Court.

***2.31 Interlocutory appeals as of right.**  D.C. Code §11-721 provides for appeals as of right to the D.C. Court of Appeals from Superior Court orders:

> (a)  granting, continuing, modifying, refusing, or dissolving or refusing to dissolve or modify injunctions;
>
> (b)  appointing receivers, guardians, or conservators or refusing to wind up receiverships, guardianships or the administration of conservators or to take steps to accomplish the purpose thereof; or
>
> (c)  changing or affecting the possession of property

**2.31 Discretionary, interlocutory appeals**.  Like federal appellate courts under 28 U.S.C. §1292(b), the D.C. Court of Appeals has discretionary authority to hear and decide otherwise non-appealable, interlocutory appeals.  The trial court must first certify that the matter sought to be reviewed "involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling or order may materially advance the ultimate termination of the litigation or case ***." D.C. Code §11-721(d) (1981) **See** D.C. App. R. 5.

**2.31.4 Agency Appeals**.  D.C. Code §11-722 (1981) confers upon the D.C. Court of Appeals appellate jurisdiction to review a final order of a District of Columbia Administrative agency in a "contested case" as that term is defined in the District of Columbia Administrative Procedure Act, D.C. Code §§1-1501 et seq. (1981).

**2.5 Supreme Court Review**

**2.51 Review generally available only by petition for certiorari.**  As set forth in §2.22, the Court Reform Act made final judgments and decrees of the D.C. Court of Appeals directly reviewable by the Supreme Court in accordance with 28 U.S.C. §1257. **See** D.C. Code §11-102  (1981). Congress also amended 28 U.S.C. §1257 by adding a sentence which provides:

> For purposes of this section, the term "highest court of a state" includes the District of Columbia Court of Appeals. **See** Key v.

---

[3]  The first two of these exceptions concern judgments of the Small Claims and Conciliation Branch of the Superior Court and criminal judgments where the penalty imposed is a fine of less than $50 for an offense punishable by imprisonment for not more than a year or by a fine of not more than $1000, or both.  D.C. Code §11-721(c)(1981).  A person fined less than $50 in a nonjury criminal contempt of court proceeding falls within the second exception.  In ew Kane, 422 A.2d 995 (D.C. 1980)

The third exception concerns decisions of the Mayor denying, revoking or suspending an operator's permit or a motor vehicle registration under the Motor Vehicle Safety Responsibility Act of the District of Columbia. See D.C. Code §40-404(b)(1981) and Thomas v District of Col. Bd. of Appeals and Review, 355 A.2d 789, 791 (D.C. 1976).  In such cases, a person seeking to appeal must file a petition for the allowance of an appeal directly with the Court of Appeals. The Court of Appeals may, in its discretion, deny such a petition, but such denial, like a ruling on the merits adverse to the appellant, constitute "an affirmance of the judgment of the trial court *** D.C. Code §17-301(b)(1981). See D.C. App. Rule 6.

2.52. **Court may review purely local law issues.** Congressional acts relating only to the District are, however, "laws of the United States" for purposes of the Supreme Court review jurisdiction conferred by Article III, Section 2 of the Constitution.  Thus, **while the Supreme Court may not review a state supreme Court's interpretation of a state statute (absent a federal question), it may review a D.C. Court of Appeals' decision interpreting an Act of Congress directed toward the District.  As a matter of policy, the Supreme Court will generally not overrule the D.C. Court of Appeals' interpretation of Congressional acts relating solely to the District save in exceptional situations where egregious error has been committed**. <u>See</u> <u>Pernell v. Southall Realty</u>, 416 U.S. 363-369 (1974) but. cf. <u>Whalen v. United States</u>, 445 U.S. 684, 688 (1980)(customary deference not appropriate where constitutional (double Jeopardy) claim cannot be separated from resolution of question of statutory construction).  *For a more detailed discussion of the relationship between the D.C. Court of Appeals and the Supreme Court, See Stern and Gressman, Supreme Court Practice (5th Ed. 1978)pp. 148-154, 306-311.*

2.7 **Relationship to the Council of the District of Columbia**.  Under Section 602(a) of the Self-Government Act, Public Law 93-198, 87 Stat. 813, D.C. Code §1-233(a)(4)(1981), the Council of the District of Columbia may not enact any act, resolution, or rule with respect to any provision of Title 11 of the District of Columbia Code (relating to organization and jurisdiction of the District of Columbia Courts).[4]

---

[4] **For judicial interpretations of this limitation, see** <u>Capitol Hill Restoration Soc., Inc. v. Moore</u>, 410 A.2d 184 (D.C. 1979); <u>District of Columbia v. Sullivan</u>, 436 A.2d 364 (D.C. 1981); and <u>District of Columbia v. Greater Washington Central Labor Council</u>, AFL-CIO, 442 A.2d 110 (D.C.), reh. denied, 445 A.2d 960 (D.C. 1982), cert denied, 460 U.S. 1016(1983).

RECEIVED
SUPREME COURT OF U.S.
POLICE OFFICE
2007 DEC 28 P 11: 5

NO. ________________

IN THE SUPREME COURT OF THE UNITED STATES

SIMON BANKS V DISTRICT OF COLUMBIA COURT OF APPEALS
(ERRONEOUSLY TITLED SIMON BANKS V. UNITED STATES)

SIMON BANKS,
Petitioner

No. 04-SP-789

---

# PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT OF COLUMBIA CIRCUIT

---

## APPEAL FROM THE DISTRICT OF COLUMBIA COURT OF APPEALS

---

Respectfully submitted

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, VA. 22302
703 965-5637

**Parties**

**For Petitioner**

Dr. Simon Banks, J.D., pro se
P.O. Box 17052
Alexandria, VA. 22302
703 965-5637

**For the District of Columbia Court of Appeals by designation**

John P. Mannarino, Esq. AUSA
555 4th Street, N.W.
Washington, D.C. 20305
Jeffrey A. Taylor, Esq. AUSA
W. McLeese, III, AUSA
Lisa Schertler and
John D. Griffith

## QUESTIONS PRESENTED

Whether the trial court had jurisdiction over the Petitioner a resident of the State of Virginia, doing business out of an office located in the State of Virginia, and exercising rights guaranteed Petitioner pursuant to the Laws of the United States and the State of Virginia

Whether the Petitioner was denied due process and equal protection of the laws When the court appointed the investigator, the prosecutor, the designated Superior Court Judge, a candidate for Associate Judge to the Court hearing the trial and the appeal, and the attorney whom the Court refuse to terminate although the Petitioner repeatedly petitioned the Court for relief alleging ineffective counsel.

Whether the Court denied the Petitioner due process when it charged the Petitioner with violating its injunction and subsequent to the trial, characterized the Petitioner's practice as unauthorized practice of law, when this charge was not in issue during the trial of the case

Whether the Court violated the Petitioner's rights pursuant to the Supremacy Clause of the United States when it enforced its local bar and unauthorized practice rules against the Petitioner which conflicted with the United States of the United States and the State of Virginia

Whether the Petitioner's rights pursuant to the First Amendment were violated when the court below subjected the Petitioner to prior restraint by enjoining Petitioner from using the titles "Hearing Examiner" and "Administrative Law Judge" interchangeably.

iii

## JURISDICTIONAL STATEMENT

The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1). The Petitioner is appeal from a final order of the District of Columbia Court of Appeals dated October 30, 2007, denying rehearing en banc of Order and Opinion issued on June 14, 2007

**PETITIONER'S PETITION FOR
WRIT OF CERTIORARI**

Comes now, Simon Banks, Petitioner, pro se, and submit Petitioner's Petition for

Writ of Certiorari appealing from a decision of the District of Columbia Court of Appeals

denying the Appellant's Petition for Rehearing En Banc, appealing the decision of the Per

Curiam panel dated June 14, 2007,

This appeal was argued on May 22, 2007 by appointed appeal counsel, before

Reid, Blackburne-Rigsby, Associate Judges and **Wagner, Senior Judge**

Petitioner sought full en banc consideration of the per curiam panel's decision to

maintain the integrity of the Court, to promote Judicial Fairness, to protect the Petitioner

from manifest injustice resulting from Judicial Conflict of Interest and the failure of

Senior Judge Annice Wagner, former Chief Judge, District of Columbia Court of Appeals

("DCCA") to recuse as a member of the panel, because of conflict of interest and to avoid

the appearance of bias, and conflict of interest.[1] **The United States is not the Appellee**

herein. [Emphasis Added]

_____

[1] Judge Wagner: a) steered the outcome of the trial and sabotaged the Petitioner's
entire defense, directly and indirectly and covered up the judicial errors,
misconduct of Judge Kramer, and abuse of authority and arbitrary actions of Judge
Kramer,
b) Judge Wagner, appointed the investigator and legislator, Stuart Pierson,
Chairman of DCCA Committee on Unauthorized Practice, and ignored all
complaints Petitioner filed against Stuart Pierson,
c) Judge Wagner appointed the Prosecutor, Thomas Zeno, AUSA, whom
requested of Judge Wagner to appoint him to prosecute the Petitioner after
the Petitioner sued him, *Simon Banks v. Holder, et al,* USDC DC (J. RC
Lamberth) and after the Petitioner filed complaint with the DCCA to hold

1

Thomas Zeno in Contempt of Court, and After the Petitioner filed complaint on March 10, 1999 with R. Keith Thomas, Associate Counsel U.S. Department of Justice Office of Professional Responsibility, for forgery, altering an official court document, corruption, obstruction of justice, etc.;

(d)   Judge Wagner appointed Judge Kramer to prosecute the Petitioner and withheld from the Petitioner that Judge Kramer was an applicant for Associate Judge of DCCA, and suppressed from the Petitioner that Judge Wagner was a sponsor and ardent supporter of Judge Kramer's application for Associate Judge DCCA, and Judge Wagner appeared before the Senate Governmental Affairs Committee confirmation proceedings along with the Hon. Eric Washington, Chief Judge, in support of Judge Kramer, and Judge Wagner condoned the perjurious testimony of Judge Kramer when Kramer testified in response to Senator (Ohio) question whether she was aware of any complaint(s) filed against her, and in response Judge Kramer stated no and that she would not ordinarily be made aware of such complaints, although the Petitioner on April 7, 2004 served Judge Kramer via facsimile and Judge Wagner via facsimile and Garland Pinkston, Clerk of DCCA via facsimile, *Simon Banks v. DCCA, Judge Annice Wagner and Judge Noel Kramer*, 04-399 along with complaint for temporary, preliminary and permanent injunctive relief, filed before the United States District Court for the Eastern District of Virginia; and

(e)   Judge Wagner appointed Edward Sullivan, Esq. As the Petitioner's Appeal Counsel, whom at all times relevant was a candidate for Magistrate Judge, and whom abandoned the Petitioner, after six months from date of his appointment, without ever disclosing to the Petitioner that he was a candidate for Magistrate Judge, and whom never discussed with the Petitioner Petitioner's Assignment of Errors, or any Assignment of Error or appeal strategy, and

(f)   Judge Wagner appointed Attorney Cynthia Nordone as the Petitioner's Appeal counsel on June 21, 2005, who used the Appointment to sabotage the Petitioner's entire defense, and whom at oral argument, waived the Petitioner's issue that there was insufficient evidence to find the Petitioner guilty of any of the four counts,

(g)   Judge Wagner used Garland Pinkston and his staff, to block the Petitioner and otherwise prevent the Petitioner from bringing to the Court's attention, the Petitioner's concerns regarding Cynthia Nordone conflict of interest, irreconcilable differences, dilatory tactics, attempts to sabotage the Petitioner's Appeal, terminating Cynthia Nordone, although there was clear evidence of ineffective counsel, conflict of interest, dilatory tactics, and although the Cynthia Nordone requested eight (8) frivolous extensions of time to file the Petitioner's brief, without objection from the government, that spanned some 14 months when and while the Petitioner was incarcerated for a period of 2 years subsequent to Judge Wagner appointing Cynthia Nordone as Petitioner's Appeal Counsel, and although

3

**THE USE OF THE UNITED STATES AS A PARTY BY THE CLERK IS AN EGREGIOUS ABUSE OF THE LOCAL POWER, AND THE MERE APPOINTMENT OF THE U.S. ATTORNEY DOES NOT AUTHORIZE THE HI-JACKING OF THE UNITED STATES AS A PARTY WHERE NO FEDERAL INTEREST IS INVOLVED, AND WHERE THOMAS ZENO, FALSELY AND FRAUDULENTLY SUBMITTED U.S. GRAND JURY SUBPOENAS TO WITNESSES WHERE NO FEDERAL GRAND JURY WAS IMPANELED.**

The United States is not a party to these proceedings.

The proceeding involves one or more questions of exceptional importance:

(A)    **Whether the Court may regulate a member of the public thru a Rule, DC Ct. App. R. 49, without a statute and not violate the Due Process Clause.**

**See Unconstitutionality of Rule 49 as enforced against Petitioner, fn3.**

(B)    The panel decision conflicts with a decision of the United States Supreme Court, *Sperry v. State of Florida*, 373 U.S. 379 (1963), which provides that

the Supremacy Clause preempt state laws that conflict with rights afforded

pursuant to the laws of the United States.    The Petitioner's authority to

practice before administrative agencies of the United States is a protected

right, authorized by the EEOC, 29 C.F.R. §1614.695, and the decision

---

the Petitioner was overdetained for some 40 days after the Petitioner's sentence expired, with a designated release date of October 2, 2006, Cynthia Nordone's Petitioner's brief was not filed until September 10, 2006, and but for the Petitioner's self-help of filing his own DC Code §23-110 Emergency Motion for Release on April 12, 2006, resulting in the Petitioner being released on April 28, 2006, the Petitioner would have been still incarcerated for a period of six months beyond the expiration of the Petitioner's Sentence. See Petitioner's Motion to Enjoin Cynthia Frank from continuing to interfere with the Petitioner's DC Code § 23-110 proceedings.

h) And where Cynthia Nordone, was encouraged by Garland Pinkston to file a emergency motion for the Petitioner's release on the date of the Petitioner's release, April 28, 2006, although the Petitioner had been transferred from the CTF to DC Jail on April 26, 2006 in connection with the Petitioner's pro se emergency Motion for immediate release.

conflicts with decision of the court to which the petition is addressed,

*Brookens v. District of Columbia Court of Appeals on Unauthorized Practice of Law*, 538 A.2d 1120, Amended Rule 49, Order M-198-96, December 11, 1997, effective February 1, 1998, and it conflicts with the laws of the domicile and residence of the Petitioner, the State of Virginia. **Virginia UPL, UPR 9-102** provides: "Unauthorized Practice of Law (UPL): Law related services provided by nonlawyer professional service entities, *Indeed, a state bar cannot restrict or interfere with practice rights conferred under federal law , and the full court is therefore necessary to* **secure and maintain uniformity of the court**

(C)    The panels decision conflicts with a decision of the United States Supreme Court, the United States Civil Service Commission, and the laws of the District of Columbia with respect to the interchangeability of the titles "Hearing Examiner" and "Administrative Law Judge" -- they are synonymous.[2] *See Respondent's Exhibit 19 regarding the* **Interchangeability of the titles "Hearing Examiner" and "Administrative Law Judge."**

(D)    This case presents a challenge to the statutory laws of the State of Virginia which authorize its citizens, in particular the Petitioner to practice law before administrative agencies of the United States, pursuant to the laws of the

---

[2] District of Columbia "Workers' Compensation Administrative Law Judges Amendment Act of 2000, D.C. Law 13-229, Reclassifying the Worker's Compensation "Hearing Examiners" as "Administrative Law Judges," OAH legislation promoted by Judge John Ferren while on sabbatical from DCCA as Corporation Counsel, that triggered his appointment to Vice President of Council for Court Excellence.

4

United States as an exception to the State of Virginia Unauthorized Practice Law.

## DC CT. APPEALS RULE 49 AS ENFORCED THROUGH ORDER 18 AGAINST THE PETITIONER IS UNCONSTITUTIONAL

(E)    This case presents a facial challenge to the constitutionality of the D.C. Court of Appeals Rule 49 as enforced and applied to the Petitioner. Rule 49 through Order 18, as enforced against the Petitioner is unconstitutional. [3]

[3] *DC COURT APPEALS RULE 49 IS UNCONSTITUTIONAL* D.C. App. R. 49 [Rule 49] is unconstitutional on the basis that it is impermissibly vague on its face, and an arbitrary restriction on personal liberties. *See Chicago v. Morales,* slip op. *No. 97-1121* at 6 (June 10, 1999), and because it fails to provide notice for parties that it regulates whom are not licensed members of the bar. The notice to this population of regulated must be clear and unambiguous. *See General Elec. Co. v. EPA,* 53 F.3d 1324, 1328-29 (D.C. Cir. 1995), and because it fails to give ordinary citizens adequate notice of what is forbidden and what is permitted; *See Coates v. Cincinnati,* 405 U.S. 489, 499, and because it is overly broad and reaches constitutionally protected conduct that is permitted by federal laws. *See Wilson v. Yoder,* 406 U.S. 205 (1972), and because it does not provide minimal standards to guide the District of Columbia Court of Appeals' prosecutors, investigators, regulatory police; and judicial officers of the Court. *See Kolender v. Lawson,* 461 U.S. at 358; and because it delegates too much discretion to the judiciary, the police, the DCCA' prosecutors and investigators; *See Smith v. Goguen,* 415 U.S. 566, 575; and because it pre-empts and undermines federal laws and rights under federal laws in violation of the Supremacy Clause, Art 6, cl. 2; *See Ham v. City of Rock Hill,* 379 U.S. 306; and because it violates the District of Columbia Act and Administrative Procedures Act for failure to publish in the District of Columbia Register, rules that it enforce against the general citizenry. *See* § 1-1505, 1-506*, § 1-1507 of the D.C. Code which requires publication of the District of Columbia Municipal Regulations and Council acts and resolutions, Chap. 15 or 16 of the Code §1532, § 1533. *See D.C. Law 1-120 "D.C. Register Publication Act of 1976" of Pub. L. 93-198,* effective April 19, 1977. (ref. 23, D.C. Register, 5050, Jan. 26, 1977). *See also D.C. Codes § 1-1509 (d)* which requires that parties be afforded opportunity to file exceptions and present arguments, D.C. Code § 1-262(b). (c). *See Mullein v. Central Hanover Bank and Trust Co.,* 33 U.S. 306, 313; *Goldberg v. Kelly,* 397 U.S. 255; and because it promotes, even encourages impermissible restraint on liberty and led to arbitrary enforcement. *Kolender v. Lawson* 461 U.S. at 357; and because it promotes and has led to acts that have abridged the right to travel and engage in commerce. *See Planned Parenthood of Central Mo. V. Danforth,* 428 U.S. 52, 82-83 (1976); *Kent v. Dulles, 357 U.S. 116, 126 (1958);* and because it promotes and has led to

(F)     This is a case that presents a challenge to the right of the Petitioner, a law

school graduate and former hearing examiner, to represent himself, pro se

against the courts imposing upon the Petitioner an ineffective counsel whom

waived 99 assignments of errors, and ignored the Petitioner's demands that

she enforce pretrial issues argued by the Petitioner pro se at the trial of the

case, and in a wholesale manner, rejected the Petitioner's affirmative

defenses, and although the Petitioner attempted to terminate the appointed

appeal counsel after she failed to file the Petitioner's brief for some 4 months,

six months, 12 months, and although appeals counsel took it to the Appointed

some 14 months and two weeks to file the Petitioner's appeal brief which

contained one assignment of error, after seeking and securing some 9

continuances without objection, and where the appointed counsel waived all

but one of the Petitioner's Assignments of errors and affirmative defenses

again at the oral argument on May 22, 2007.

**DEPRIVATION OF A FAIR TRIAL WHEN JUDGE KRAMER DID NOT RECUSE**

1.      The Court deprived the Petitioner of a fair trial when Judge Kramer did not

recuse, when she suppressed from the Petitioner that she was an applicant and candidate

for Associate Judge to the DCCA, and when Judge Kramer waited until the close of the

evidence and the end of the trial to rule upon the Petitioner's Motion challenging the

impermissible restraint on the liberty of contract, Art. 1§10, Clause 1, and because it

abridges the Privileges and Immunities Clause, Article IV, Cl. I. *See New Hampshire*

*v. Piper, 470 U.S. 284;* and because it impermissibly operates to trespass and

encroach upon the executive or legislative authority, in violation of the separation of

powers.

7

jurisdiction of the Court for purposes of steering the outcome and for the purpose of preventing the Petitioner from submitting challenges to the Court's decision on jurisdiction.

2. **Judge Kramer ordered Petitioner released on June 7, 2004, and forced the Petitioner to Alexandria, Va. In violation of the Extradition laws and Compact Act, when the Petitioner was serving a sentence imposed by Judge Kramer on June 3, 2004, and Judge Kramer issued a bench warrant on June 24, after the Petitioner was transferred to Virginia on June 23, 2004, thereafter causing the Petitioner to be overdetained for 40 days subsequent to the expiration of the Petitioner's sentence.**

3.     The Court deprived the Petitioner of a fair and impartial judge when Judge Kramer suppressed from the Petitioner that she was planning to convict the Petitioner and use her decision against the Petitioner as a catalyst to promote her application as an associate judge to the DCCA, and for purposes of citing her decision in the instant case involving the Petitioner, as her most important case, in response to expected questions and inquiry of the Senate, requesting her to identify some of her most important cases, for purposes of promoting her self interest against the Petitioner's Constitutional right to a fair trial.

## DEPRIVATION OF EFFECTIVE ASSISTANCE OF COUNSEL AND NULLIFICATION OF THE PETITIONER'S ABILITY TO ASSIST IN HIS APPEAL

4.     The Court deprived the Petitioner of effective assistance of counsel on appeal and nullified the Petitioner's ability to assist in the prosecution of his appeal, pursuant to the conspiracy between Judge Kramer and Judge Wagner, and Garland Pinkston, to steer the outcome, when the Court directly and indirectly blocked all of the Petitioner's efforts

8

to terminate Cynthia Nordone, as Wagner appointed appeal counsel notwithstanding extreme evidence of ineffective counsel, conflict of interest, and that Cynthia Nordone was serving as a second prosecutor. The Court deprived the Petitioner of his constitutional right to represent himself on appeal, notwithstanding appointed counsel Cynthia Nordone's failure to file the Petitioner's appeal for one year and two months after being appointed, and not withstanding the Petitioner's numerous complaints against Cynthia Nordone, for irreconcilable differences, ineffective counsel, dilatory tactics, plan to sabotage the Petitioner's appeal. Cynthia Nordone passed the Bar in 2002. **See the attached exhibits, 4th Motion to terminate Nordone. 3-14-2006 letter to Nordone.**

5.     The *Baish* case, *United States v. Baish*, 460 A.2d 38, 40 (D.C. 1983)  is inapplicable to the instant case, Petitioner never called into the District of Columbia, as in *Baish*.
The *Hunter* case, *Hunter v. United States*, 48 U.S. App. D.C. 19 (1918), is inapplicable to the instant case.  The Petitioner never went into another state that was under contract with the District of Columbia, to commit an offense against the District of Columbia in connection with the District of Columbia contract with the sister state.
There is no nexus. (Cited in the per curiam decision at 12¶2.)

6.     The DCCA has stretched the reach of its authority to cover the entire United States and its territories, by, based upon a conclusive presumption, articulating that it has nationwide criminal jurisdiction to protect its "orderly administration of justice." No such right has been vested in the District of Columbia Courts by the Constitution or the United States Congress. Art. 1, §8, cl 17. To create this legislative stretch by judicial decree is overreaching, and violates the plenary powers of the United States Congress.

Art. 1, §8, cl 17.

6

7.    The Dyson case is inapplicable to the instant case.

8.    The Court order, ordering the Petitioner, a resident of the State of Virginia, to State a falsity on advertisements and any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state: that the Petitioner is trading as Job Protectors, which the Petitioner is not and requiring that the Petitioner to state he is not authorized to give opinions concerning any persons legal rights, when the Petitioner is authorized the Petitioner to give legal opinions in connection with the Petitioner's authorization to practice law before administrative agencies of the United States.

9.    This speech restraint is preempted by the Supremacy Clause, enforcement of 29 CFR §1614.605, 5 U.S.C. §2303, et seq., EEOC Management Directive 110, against Rule 49, and Order 18 which conflict with Rule 49 and Order 18 in that they violates the Petitioner's constitutional rights pursuant to the Supremacy Clause, the First Amendment. See District of Columbia Court of Appeals (DCCA) Rule 49 as amended, Order M-198-96, December 11, 1997, effective February 1, 1998. See Virginia UPL, UPR 9-102 [4], and

---

[4] Virginia UPL, UPR 9-102 provides: "Unauthorized Practice of Law (UPL): Law related services provided by nonlawyer professional service entities. Indeed, a state bar cannot restrict or interfere with practice rights conferred under federal law. See Sperry v. Florida, 373 U.S. 379 (1963). At fn. 5, Va. UPR 9-102 provides: "A partial list of some federal agencies allowing "qualified representatives" (nonlawyers) to act on behalf of a party before that agency includes:

a.    Department of Treasury, Internal Revenue Service and Tax Court – 31 U.S.C. § 330; 5 U.S.C. § 500; 31 C.F.R. § 10.33; IRC § 7452 and Tax Court Rule of Practice and Procedure 200

b.    Immigration and Naturalization Service – 8 C.F.R. § 3.1(d)(3)

c.    Department of Energy – 10 C.F.R. § 205.3

10

See *Sperry v. State of Florida*, 373 U.S. 379 (1963), 29 C.F.R. §1614.605; EEOC **Management Directive 110 (MD-110), and the Commerce Clause,**

Clearly the lack of practice rules, rules of interpretation, and guidelines to govern DCCA's enforcement of Rule 49, has led to unequal evaluation. "The formulation of uniform rules to determine intent based on these recurring circumstances is practicable and, we conclude necessary. *Ibid.* at 7. *See Gore v. Harris*, ___ So. 2d ___ (slip op at 51)(citing from *Bush v. Gore*, slip op. No. 00-949, 531 U.S. at 6 (2000).

The DCCA, from 1987 through the present, interpreted Rule 49 as if it were a statute, and as not providing the court with jurisdiction over practice before administrative agencies when applied to the Kentucky attorney **Benoit Brookens,** and the **Bellingers.**[5] The DCCA's inconsistent interpretation of its own Rule, Rule 49, has on a sustained and continuous basis deprived the Petitioner of equal protection of the laws.

## LACK OF JURISDICTION OVER FEDERAL PRACTICE LOCATED IN THE STATE OF VIRGINIA

10.     The Court erred when it ruled it has jurisdiction over the Petitioner's professional authorized practice located in the State of Virginia, licensed to do business in the State of Virginia. *Id.* and authorized by the United States EEOC and the United States Merit Systems Protection Board, nationwide. The territorial scope of the DCCA's jurisdiction is limited to the jurisdiction vested in it by the United States Congress, Art. I

d.  Social Security Administration – 20 C.F.R. § 416.1400
e.  Drug Enforcement Agency – 21 C.F.R. § 1316.5-
f.  National Labor Relations Board – 29 C.F.R. § 102.38
g.  Equal Employment Opportunity Commission – 29 C.F.R. § 1601.7
h.  Health and Human Services – 45 C.F.R. § 205.10 (a)(3)(iii)

[5] *Brookens v. District of Columbia Court of Appeals*, 538 A.2d 1120, *Simon v. Bellinger*, 643 F.2d 774 (1980), "*Sperry v. State of Florida*, 373 U.S. 379 (1963].

§§8, cl 17, and the District of Columbia Code. **See** *Pedmore v. United States*, 411 U.S. 389 at 394 (1973). See Senate Rep. No. 91-405 at Page 1 through 3, 5, 18; H.R. Rep. No. 91-907, Pp. 23-24-33 pursuant to its Clause 17 authority, Congress enacted laws that compose the District of Columbia Code. The 1970 Reorganization Act amended the Code by creating the Superior Court of the District of Columbia and the District of Columbia Court of Appeals. The Courts being expressly established pursuant to Art. 1 of the Constitution. D.C. Code Ann. § 11-101 (2)(Supp. V 1972). See n2 *supra*. The Superior Court among other things, was vested with jurisdiction to hear criminal cases involving alleged violations of criminal laws applicable only to the District of Columbia, *i.d.* § 11-923; the District of Columbia Court of Appeals, with jurisdiction to hear appeals in cases. *I.d.* § 11-721. (*i.d.* at 398). None of the acts complained of took place within the District. The term "within the District" is a term of art. **See** *Blair-Bey v. Quick*, 151 F.3d at 1043 [n4]. **See also,** *McCall v. Swain*, 510 F.2d 167 (D.C. 1975).

11.   Judge Levie's speech restrictions contained in Order 18, which derive from Rule 49, as articulated by the trial judge at 4 Findings of Fact and Legal Conclusions (FFLC), violates the Petitioner's right to Free Speech and Association pursuant to the

Free Speech Clause of the First Amendment,[6] and is preempted by Supremacy Clause.

---

[6] The Injunction punishes the Petitioner for exercising rights connected with Freedom of Association with the Legal Profession, by virtue of Petitioner's Law Degree, by virtue of his restricted federal administrative practice, by virtue of Petitioner's former position as an Administrative Law Judge and Hearing Examiner (both titles are synonymous and involve adjudicating administrative hearings, where attorneys represented their clients before the Petitioner sitting as a "Judge", a "right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society. *See De Jorge v. Oregon*, 299 U.S. 353, 364, *Bates v. Little Rock*, 361 U.S. at 522, 523.

11

12.     The DCCA has never promulgated any guidelines for implementation and enforcement of Rule 49. *See Brookens v. District of Columbia Court of Appeals on Unauthorized Practice of Law*, 538 A.2d 1120.

13.     These speech-restraint prohibitions that burden Petitioner and Petitioner's class (unlicensed practitioners whom are not licensed by any state bar) cannot survive the "rational basis" review which the Court require to be rationally related to a legitimate governmental purpose." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446 (1985).

14.     To punish the Petitioner for truthful speech, under the pretext of maintaining the orderly administration of justice, and by prosecuting the Petitioner for practicing law without a state bar license where no State Bar license is required, is unethical, wrongful and violates the prohibition regarding prior restraint and self-censorship which is disfavored by the First Amendment. *Fla Star*, 491 at 535. *See New York Times v. United States*, 43 U.S. 713-725-26 (Brennan, J. Contrary), *United States v. Noriega*, 917 F.2d 1543, 1549 (11ᵗʰ Cir. 1990). The DCCA, under the pretext of protecting the public and the administration of justice, ignore Petitioner's constitutional rights that authorize Petitioner's practice and titles. (citing from *NAACP v. Alabama ex rel Patterson*, 357 U.S. 449, at 439, "..., A state may not, under the guise of prohibiting professional misconduct, ignore constitutional rights. *See Schware v. Board of Bar Examiners*, 353 U.S. 232; *Konig at berg v. State Bar*, 353 U.S. 252.

The Court may not use *United States v. Baish*, 460 A.2d 38, 40 (D.C. 1983) (cited at 13 ¶1 of the Per Curiam decision), because in *Baish*, the defendant called into the District

12

13

of Columbia, as opposed to the instant case, where the government employee of the

United States Attorney, called the Petitioner from a phone, purportedly located in D.C.

## FAILURE TO PROVIDE COUNSEL AT SENTENCING VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHTS

21.  ·The **Court** failed to provide defendant counsel at sentencing, and the Court erred when it did not inquire of defendant whether defendant wished to have counsel appointed and available at sentencing This error violated defendant's Constitutional Right pursuant to the Sixth Amendment of the Constitution, the Right to Counsel. Because of the sua sponte arrest on April 8, 2004 and the Summary Proceedings on June 3, 2004, the defendant was unable to bring this claim at trial. The defendant never waived right to counsel. Moreover, the extent of inquiry before accepting a waiver of counsel at sentencing the Court never engaged in pursuant to the requirement of *Von Moltke v. Gillies*, 332 U.S. 708 (1948), *Moore v. Michigan*, 355 U.S. 155 (1957); *Robins v. United States*, 404 U.S. 1049 (1972 dissenting opinion). See also *Boyd v. Dutton*, 405 U.S.

(1972). See also *Iowa v. Tovar*, 541 U.S. --, 124 S.Ct. 1379 (2004).

## THE GOVERNMENT CONTACT EXCEPTION PREEMPTS THE COURT JURISDICTION OVER THE DEFENDANT IN CONNECTION WITH THE DEFENDANT'S CONTACTS WITH THE UNITED STATES GOVERNMENT

While the Petitioner did not enter the District of Columbia, it is well established law that "Entry into the District of Columbia by nonresidents for purposes of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction" *Environmental Research Int'l, Inc. v. Lockwood Green Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc.) The rationale for this exception. The **Government Contacts Exception** has been upheld and cited in the following cases: "The District of Columbia Court of Appeals has stated repeatedly that the jurisdictional reach of DC Code § 13-423

14

is coextensive with the Due Process Clause. *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d. 79,

80 (DC 1979), and 521 F.Supp. 142 Supra, the Court cites Judge Ferren in the conclusion

reached by the District of Columbia Court of Appeals in *Rose v. Silver*, 394 A.2d. 1368

(DC 1978). Judge Ferren first distinguished *Environmental Research International Inc.*

v. *Lockwood Green Engineers, Inc.*, 355 A.2d. at 812, which held that the end-state acts

of an ''independent contractor'' could not be attributed to the nonresident for jurisdiction.

**SPECIFIC JURISDICTION UNDER DC CODE § 13-423**
**''TRANSACTING BUSINESS''**

The government failed to prove that the Petitioner purposefully directed his

activities at residents of the forum state. In *Gonzalez v. Internacional De Elevadores*,

2006 DC App LEXIS 21, [HN7] the DC Court of Appeals, provide:

We conducted an extensive analysis of the history of section 13-423 (a) (1) and (b) in

*Shopper's Food Warehouse v. Moreno*, 746 A.2d. 320, 324-330 (DC 2000) citing *Int'l,*
*Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d. 808, 810-811 (DC 1976) (en banc)

... In other words, the defendant must have minimum contacts with the forum so that

exercising personal jurisdiction over it would not offend ''traditional notions of fair play

and substantial justice.'' *Shopper's*, 746 A.2d. at 330 (citing *International Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945). **Hence the defendant must have ''purposefully**

**directed'' [his] activities at residents of the forum ....''** *Shoppers*, 746 A.2d and

**331....This means that the non-resident defendant's ''conduct and connection with**

**the forum state are such that he would reasonably anticipate being haled into court**

**there.''....[843] ...''This single, responsive mailing cannot constitute meaningful''**

**contact, *Burger King*, 471 U.S. at 472, or ''substantial connection between the defendant**

**and the forum state, *McGee v. Int'l Life Ins.*, (1951)'' [HN7]** ''The scope of its otherwise

broad ''transacting any business'' clause is limited by the rule that contact with a federal

instrumentality located in the District will not give rise to personal jurisdiction.

*Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d. 808, 813

(DC App. 1976) en banc.

**THE GOVERNMENT MUST ESTABLISH JURISDICTION OVER PERSON**

The government failed to establish jurisdiction over Petitioner. The Court in

*United States v. Ferrara*, 54 F.3d. at 833, 1995 U.S. App. LEXIS 11789 at 24 opined:

''...the government must nevertheless establish the District Court's jurisdiction

over her person.'' (citing *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d. 24, 29 (1st

15

Cir. 1988); see also *Edmond v. U.S. Postal Serv. Gen. Counsel,* 292 U.S. App. DC 240 (DC Cir. 1991). See § 13-423 (A) (4)

See *McFarland v. Esquire Magazine,* 74 F.3d at 1301, (citing *Keeton v. Hustler Magazine,* 465 U.S. 770, 781 n.13 (1984), *Klinghoffer v. S.N.C. Achille Lauro,* 937

F.2d. 44, 52 (2nd Cir. 1991), including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, with the District." The writer is not the publisher; *Unger's* contacts must be accessed separately." See *Keeton v. Hustler Magazine,* 465 U.S. 770, 781 n.13 (1984)

ASSOCIATE JUDGE JOHN FERREN, TEMPORARILY STEP DOWN TO BECOME CORPORATION COUNSEL AND FACILITATED A CHANGE IN THE TITLE "HEARING EXAMINER" TO "ADMINISTRATIVE LAW JUDGE" AND THE NEW LAW ARISING OUT OF JUDGE FERREN'S ACTIONS REQUIRED A LICENSE TO PRACTICE LAW AS A CONDITION FOR RETAINING THE CONVERTED HEARING EXAMINER POSITION TO ALJ, WHEN AND WHILE THE DCCA WAS PROSECUTING THE PETITIONER FOR SPEAKING OF THE INTERCHANGEABILITY OF THE TITLES

See D.C. Administrative Hearing Establishment Act (OAH), D.C. Law 14-76, March 6, 2002. See DC Law 13-229, Worker's Compensation Administrative Law Judges Amendment Act of 2000 effective April 13, 2001. See attached, Act, Office of Administrative Hearings Establishment Act of 2001.

**Wherefore,** Petitioner pray that this Honorable Court reverse the decision of the District of Columbia Court of Appeals and sanction the District of Columbia Court of Appeals for covering up judicial misconduct and perpetuating judicial abuse of power, engaging in retaliation for the Petitioner's exercise of First Amendment rights to Petition the Government for Redress.

Dr. Simon Banks, J.D.

91

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of this Petition was mailed, postage prepaid, and/or sent via electronic mail, this 28th day of December, 2007, to:

John P. Mannarino, Esq. AUSA
555 4th Street, N.W.
Washington, D.C. 20305
Jeffrey A. Taylor, Esq. AUSA
W. McLeese, III, AUSA
Lisa Scherter and
John D. Griffith

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
703 965-5637
drsbanks@msn.com

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## No. 04-SP-789

SIMON BANKS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CSP1008-04)

(Hon. Noel A. Kramer, Trial Judge)

(Argued May 22, 2007                    Decided June 14, 2007)

*Cynthia Nordone*, appointed by the court, for appellant.

*John P. Mannarino*, with whom *Jeffrey A. Taylor*, United States Attorney, and *Roy W. McLeese III, Lisa Schertler*, and *John D. Griffith*, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and BLACKBURNE-RIGSBY, *Associate Judges*, and WAGNER, *Senior Judge.*

REID, *Associate Judge*: This is our fourth case involving appellant, Simon Banks, a 1975 law school graduate who has never been admitted to the Bar of the District of Columbia, nor to any other bar, and who previously has been held in civil contempt, convicted of criminal contempt, and found in violation of trade practices, for acts relating to the unauthorized practice of law. *See In re Simon Banks*, 805 A.2d 990, 993 (D.C. 2002) (*Banks III*) (sustaining contempt orders "resulting from appellant's disregard of injunctions issued by this court against the unauthorized practice of law" and affirming an "order directing appellant to pay partial attorney's fees of members of the Committee on Unauthorized Practice of Law [], which sought to enforce the court's prior injunction"); *Banks v. District of Columbia Dep't of Consumer and Regulatory Affairs*, 634 A.2d 433,

2

439-40 (D.C. 1993) (*Banks II*) (sustaining a determination by the District's Department of Consumer and Regulatory Affairs that appellant "engaged in three deceptive trade practices," in violation of the District's Consumer Protection Procedures Act, "based on the unauthorized practice of law"); and *In re Simon Banks*, 561 A.2d 158, 167-69 (D.C. 1987) (*Banks I*) (finding, after a hearing conducted by a senior judge of this court on the petition of the court's Committee on Authorized Practice of Law, that "appellant has violated this court's rule prohibiting the unauthorized practice of law," and enjoining appellant from engaging in specified acts relating to the practice of law or the status of a lawyer).

The case before us grew out of a 2002 request by the United States Attorney for the District of Columbia for contempt proceedings against Mr. Banks for violation of a 1995 order.[1] After the issuance of a show cause order, a hearing took place before a Superior Court judge, sitting by designation. The judge "[found] beyond a reasonable doubt that [Mr. Banks] is guilty of contempt as charged . . . ." Mr. Banks filed an appeal. In his brief on appeal, submitted by a court-appointed attorney, Mr. Banks mainly argues that this court "acted beyond its authority in convicting him of contempt . . . [because] [t]he conduct complained about here is beyond the scope [of the rule regulating unauthorized practice of law]," since it occurred outside the District of Columbia. Alternatively, he asserts that "the evidence was insufficient to prove beyond a reasonable doubt that [he] committed criminal contempt," that is, that he "willfully violated" the court's order. We affirm the order of April 8, 2004, adjudging Mr. Banks guilty of criminal contempt as charged.

---

[1] Order #18 is an extensive sixty-five page document issued on January 13, 1995, which includes a permanent injunction, an expansion of the court's 1987 injunction. *See Banks III, supra,* 805 A.2d at 995.

3

## FACTUAL SUMMARY

In our prior cases we recounted part of the protracted history of complaints against Mr. Banks, beginning in 1984, and his persistent violation of court orders enjoining him from holding himself out as a lawyer and engaging in related conduct. We do not repeat that history, except as necessary to an understanding of the case now before us. In January 1995, after finding that Mr. Banks had "flagrantly, repeatedly, intentionally, and contumaciously violated virtually every provision of the Court's 1987 injunction," *Banks III, supra*, 805 A.2d at 995, the Honorable Richard A. Levie, sitting by designation as a member of this court, imposed "an expanded and stricter injunction" ("Order #18"). *Id.* In 1996, Mr. Banks was convicted on five counts of criminal contempt for violations of the 1995 injunction, but his sentence was suspended and he was placed on five years of conditional probation. In light of allegations that Mr. Banks violated the conditions of his probation, Judge Levie held a hearing. Upon finding repeated violations of the conditions of his probation in August 1997, the judge revoked Mr. Banks' probation, sentenced him to 175 days of incarceration, suspended execution except for twenty-one days, and again placed him on probation. His probation terminated on August 27, 2001.

Undeterred by his criminal contempt conviction and punishment, Mr. Banks engaged in other acts – from October 2001 to December 2001, and in February 2002, July 2002, and October 2002 – ostensibly prohibited by Order #18. As a result of Mr. Banks' renewed efforts to circumvent the 1995 permanent injunction, the United States Attorney for the District of Columbia filed an application (with a sworn affidavit and exhibits) in this court on December 11, 2002, requesting the initiation of a criminal contempt proceeding against

Mr. Banks" for his willful disobedience of this [c]ourt's Order # 18," specifically paragraphs

(3), (4) and (6).² In response to the application and to the accompanying government request

—————————

² Paragraphs (3), (4) and (6) of Order #18 provided:

Respondent is hereby permanently enjoined and restrained specifically from: . . .

(3) Using such terms to describe himself or his qualifications as "administrative law judge", "administrative trial advocate", any abbreviation of the foregoing terms, or any other similar term or description also which reasonably denotes that Respondent's former employment as a hearing examiner constitutes a qualification or license to practice law in the District of Columbia;

(4) Describing his business as providing legal representation in any field, describing his professional or business activity as going to, or acting in court, or describing his business as providing nationwide representation; . . .

(6) Using any advertising materials, business cards, firm resumes, personal resumes, firm descriptions, stationery, personalized forms or any other business documents relating to representation of individuals before administrative agencies or courts in this jurisdiction which do not expressly state:

THIS IS TO ADVISE THAT SIMON BANKS, AND SIMON BANKS T/A JOB PROTECTORS, IS NOT ADMITTED TO AND HAS NEVER BEEN ADMITTED TO PRACTICE LAW IN THE DISTRICT OF COLUMBIA, OR ANY OTHER JURISDICTION, HE IS NOT AUTHORIZED TO REPRESENT ANY PERSON OR ENTITY BEFORE ANY COURT IN THE DISTRICT OF COLUMBIA, HE IS NOT AUTHORIZED TO GIVE OPINIONS CONCERNING ANY PERSON'S LEGAL RIGHTS.

This statement shall be printed, in all instances, in bold-face, underscored, in all capital letters. It shall be printed at the beginning of all documents not signed by customers in a separate paragraph in typeface no smaller than the largest

(continued...)

for the appointment of a presiding judge, the issuance of a show cause order to Mr. Banks, and the scheduling of a status hearing, the Chief Judge of this court at the time issued an order on December 17, 2002, designating and assigning the Honorable Noel Anketell Kramer, then an Associate Judge of the Superior Court of the District of Columbia, "to serve as a judge of this court for the purposes of conducting a contempt hearing in [Mr. Banks'] case]."³

On March 5, 2003, Judge Kramer ordered Mr. Banks to appear and show cause on March 24, 2003, "why [he] should not be held in criminal contempt and punished for such criminal contempt by reason of his failure and refusal to comply with Order #18." The order to show cause contained four counts of contempt, as proposed by the United States Attorney. These counts related to (1) Mr. Banks' advertisements in a federal publication and on the radio using language prohibited by Order #18 and his failure to include the disclaimer, required by Order #18, pertaining to his lack of authority to practice law in this or any other jurisdiction in the United States; (2) his description of himself in a notice of representation sent to the federal Department of Education "as a former administrative law judge and a provider of nationwide representation," and his omission of the required disclaimer; and (3) his description of himself in a telephone conversation (with a criminal investigator employed

---

²(...continued)
typeface of the remainder of the document. With respect to each document that a customer signs, this statement shall appear at the beginning, in a separate paragraph, in typeface no smaller than the largest typeface of the remainder of the document; and the customer shall initial each line and then sign immediately below the statement indicating the actual date of execution[.]

³ Judge Kramer was nominated by the President of the United States as an Associate Judge of this court in February 2005, was confirmed by the Senate, and assumed her position on August 1, 2005.

5

by the United States Attorney's office" "as a former administrative law judge and a provider of nationwide representation."

The hearing on the show cause order took place on January 16 and 20, 2004. The government presented testimony from Diane Eickman, a criminal investigator for the United States Attorney's office in the District of Columbia, who on July 10, 2002, called a Virginia telephone number listed in an advertisement placed by Mr. Banks in the Federal Times, a government publication "routinely distributed in the District." She made the call from her office in the District. The purpose of her call was "to see how Mr. Banks would identify himself."[4] Ms. Eickman called herself "Diane Eckard" and said she was a federal government employee who "was having a problem with [her] supervisor," and that "the agency [she] worked for was in the District of Columbia." In answering the telephone, Mr. Banks stated, "Judge Banks Group."[5] When Ms. Eickman responded, "Judge Banks," the person on the other end of the line replied, "yes."

Tamika Williams, a credit and billing manager for the Army Times (the Federal Times "is a subsidiary of Army Times Publishing" and is "geared toward federal employees"), testified that about 65,000 copies of the Federal Times, a weekly publication, are distributed in the Washington Metropolitan area with the District of Columbia as "a high target area";

---

[4] Ms. Eickman's conversation with Mr. Banks was recorded and the government introduced the recording into evidence.

[5] Ms. Eickman stated that she knew the voice on the telephone was that of Mr. Banks because she went to his apartment on August 12, 2002, with an FBI Special Agent. Although there was no answer at his apartment, as she proceeded to the elevator to leave, she spoke to a man who was walking toward her. She recognized him from photographs of Mr. Banks. When he said, "hello," she recognized his voice from her earlier telephone conversation, and watched him go to the apartment where Mr. Banks lived.

9

7

that "Dr. Simon Banks and Associates" of Alexandria, Virginia, requested that an advertisement be placed in the Federal Times for nine consecutive weeks beginning on October 8, 2001 and continuing through December 17, 2001. The advertisement stated in pertinent part:

**DR. SIMON BANKS & ASSOCIATES**
**FORMER ADMINISTRATIVE LAW JUDGES**
**VICTIMS OF WRONGFUL EMPLOYMENT ACTS**

If you have been a victim of discrimination, reverse discrimination or wrongful Employment action because of your race, sex, age, disability, or because you filed a previous complaint, or because you were a whistle blower, call [the listed Virginia telephone number], E-Mail: drsbanks@msn.com, and be represented by a former Judge* Nationwide Representation.

(Emphasis in original).

Gregory Pack, a sales representative with Verizon Communications, examined telephone billing records for Mr. Banks during the period October 2001 through February 2002. Mr. Banks is identified in the billing as "Judge S. Banks-ALJ," with a Virginia billing address; the Virginia address is the same one which appeared in Mr. Banks' Federal Times advertisement. Mr. Pack also testified concerning a District of Columbia telephone number assigned to "Simon Banks, Judge" as of September 23, 2002. Calls to the District number were forwarded to Mr. Banks' Virginia telephone number.[6]

---

[6] The trial court admitted government exhibits regarding the telephone records reviewed by Mr. Pack.

8

Laura Skelly Gonzalez, general sales manager for WIZW-FM, an affiliate of ABC,

provided information pertaining to a broadcast contract between the radio station, located in

the District, and Mr. Banks. Mr. Banks used the name "Judge Simon Banks Group" or

"Judge Simon Banks" for a sixty-second and a ten-second commercial aired on WIZW-FM

for the period October 21, 2002 to May 4, 2003.[7] The sixty-second radio advertisement

stated, in part:

GOVERNMENT EMPLOYEES PROTECT YOUR
RIGHTS. If you are a victim of employment discrimination, on
the basis of race, sex, age, handicap, or if you've been denied a
promotion, subjected to wrongful termination, suspension or
retaliation because you filed a complaint against your
supervisor, or because you are a whistleblower, CALL JUDGE
BANKS GROUP AT 202-347-5458 AND BE
REPRESENTED BY A FORMER JUDGE ....

Judge Simon Banks, Former Administrative Law Judge, and
CEO of JUDGE BANKS' GROUP has represented attorneys,
doctors, unions, and is authorized to represent clients in all the
50 States. Protect your employment. Call Judge Banks' Group,
202-347-5458.

Anthony L. Thompson, another government witness, worked in the District of

Columbia, at the Office of Indian Education at the federal Department of Education, from

December 1990 through October 10, 2003. After the Department gave him notice of intent

to suspend him in 2002, he "located an attorney" through a federal newspaper. Mr.

Thompson met with Mr. Banks in Virginia. Mr. Banks informed Mr. Thompson that "he was

a former administrative judge." Mr. Thompson executed a representation agreement with

---

[7] The trial court admitted a government exhibit showing an invoice relating to Mr. Banks' contract with WIZW-FM, copies of checks or money orders from Mr. Banks for the advertisement, e-mail communications between the station and Mr. Banks, and "a text version of the commercial that aired on [the] radio station for Mr. Banks."

6

Mr. Banks, paid him a consultation fee, and other additional fees.[8]  Mr. Banks sent a letter concerning his representation of Mr. Thompson to an official at the Department of Education in the District, Cathie Martin.  The term "Administrative Law Judges" appeared in bold print at the top of the letter, and the words "Nationwide Representation" were placed at the bottom of the letter, also in bold print.

Judge Kramer issued a detailed, thirty-five page cogent analysis on April 8, 2004, which contained factual findings and conclusions of law.  The Judge "[found] beyond a reasonable doubt that [Mr. Banks] is guilty of contempt as charged in Counts One, Two, Three and Four of the Show Cause Order . . . ;" the judge sentenced him to six months in jail on each count (to run consecutively), and imposed a fine of $4,000.00, payable six months after release from jail.

## ANALYSIS

Mr. Banks asserts that this court "acted beyond its authority in convicting him of contempt . . . [because] [t]he conduct complained about here is beyond the scope" of its rule concerning the unauthorized practice of law, since it "occur[red] outside of the District of Columbia."  He also contends, alternatively, that "the evidence was insufficient to prove beyond a reasonable doubt that [he] committed criminal contempt," that is, that he "willfully violated" the court's order.  The government maintains that Mr. Banks' "claim amounts to an assertion that the evidence against him was insufficient because the government failed to

---

[8] The government introduced into evidence the receipt for the consultation fee.

prove that the offense occurred in the District of Columbia'; and that the evidence was sufficient to prove that Mr. Banks violated Order #18, as charged.

We previously summarized our standard of review in a criminal contempt case:

> "On appeal of a finding of criminal contempt, we must view the evidence in the light most favorable to sustaining the judgment." *In re Vance*, 697 A.2d 42, 44 (D.C. 1997) (citing *Bethard v. District of Columbia*, 650 A.2d 651, 654 (D.C. 1994) (per curiam)). The trial court's findings may not be disturbed "unless they are 'without evidentiary support or plainly wrong.'" *Id.* (quoting *Bethard, supra*, 650 A.2d at 654). To establish criminal contempt, the government must prove beyond a reasonable doubt that the defendant willfully disobeyed a court order, "causing an obstruction of the orderly administration of justice." *Swisher v. United States*, 572 A.2d 85, 89 (D.C. 1990) (citing *In re Thompson*, 454 A.2d 1324, 1326 (D.C. 1982) (per curiam)).

*Jones v. Harkness*, 709 A.2d 722, 723 (D.C. 1998); *see also In re Ryan*, 823 A.2d 509, 511-12 (D.C. 2003); *Banks III*, 805 A.2d at 1003; *In re Richardson*, 759 A.2d 649, 654 (D.C. 2000). "'The offense of criminal contempt requires proof of a contemptuous act and a wrongful state of mind.'" *Banks III*, 805 A.2d at 1003 (quoting *Mabry v. Demery*, 707 A.2d 49, 51 (D.C. 1998)). "'A contemptuous act may be conduct that interferes with the orderly administration of justice or it may be 'disobedience or resistence' to court orders through actions committed outside the presence of the court.'" *Id.* (quoting *Grant v. United States*, 734 A.2d 174, 176 (D.C. 1999)).

Mr. Banks' argument that this court acted beyond the scope of its powers and jurisdiction is unavailing. Under D.C. Code § 11-741 (a) (2001), "the District of Columbia

10

Court of Appeals, or a judge thereof, may punish for disobedience of an order or for contempt committed in the presence of the court." D.C. Code § 11-707 (a) authorizes the Chief Judge of this court to "designate and assign temporarily one or more judges of the Superior Court of the District of Columbia to serve on the District of Columbia Court of Appeals . . . whenever the business of the District of Columbia Court of Appeals so requires." Moreover, this court has the power to regulate the practice of law in this jurisdiction, and that power encompasses the unauthorized practice of law. *See Brookens v. Committee on Unauthorized Practice of Law*, 538 A.2d 1120, 1125 (D.C. 1988) ("The great weight of authority renders it almost universally accepted that the highest court in the jurisdiction is imbued with the inherent authority to define, regulate, and control the practice of law in that jurisdiction[;]" and "[i]t is generally conceded that the constitutional or statutory power to control bar admissions and discipline of members entails the authority to control unauthorized practice.") (citations omitted); *see also* D.C. Code § 11-2501 (a) ("The District of Columbia Court of Appeals shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion.").

As part of its authority to control the unauthorized practice of law, this court promulgated D.C. App. R. 49. Rule 49 (a) provides: "No person shall engage in the practice of law in the District of Columbia or in any manner hold out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the District of Columbia Bar, except as otherwise permitted by these Rules." Rule 49 (e)(2) specifies, in pertinent part: "Violations of the provisions of this Rule 49 shall be punishable by the Court of Appeals as contempt; . . . ."

11

12

Rule 49 generally precludes a person who is not an active member of this jurisdiction's Bar from engaging in the practice law in the District. It also prohibits such a person from holding himself or herself out in any manner as competent to practice law in the District. This case requires us to determine whether the acts engaged in by Mr. Banks fall under the authority of this court to regulate the practice of law in the District of Columbia. We conclude that they do.

In *Hunter v. United States*, 48 U.S. App. D.C. 19 (1918), the defendant, who violated a District of Columbia juvenile court order by removing his son from a Maryland institution, was found guilty of contempt of court. On appeal, the father argued that the court had no jurisdiction because the act of contempt took place in Maryland. The court rejected his jurisdictional contention, saying:

> The fact that the offense was committed at a point remote from the court, in an adjoining State, is of no importance. "The question is not one of geography or topography, or propinquity or remoteness, but one of direct influence upon the administration of justice. The administration of justice is equally obstructed wherever the act is done; and the place of the solicitation is absolutely of no consequence whatever. Whether the act was done in the courthouse, or a mile or 100 miles away, the result is precisely the same; the disturbance to the court is precisely the same. The act in its nature is not dependent upon location for its greater or less influence on the administration of justice.

*Id.* at 25 (quoting *McCauly v. United States*, 25 App. D.C. 404, 413 (1905)); *see also Crutchfield v. United States*, 779 A.2d 307, 334 (D.C. 2001) (defendant was charged with obstruction of justice in the District of Columbia for actions that "took place wholly in Maryland" court had jurisdiction and the conviction was affirmed); *Ford v. United States,*

616 A.2d 1245, 1252 (D.C. 1992) ("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if [the actor] had been present at the effect . . .") (citation omitted). In addition, we have held previously that where an element of the crime takes place within the District of Columbia, the court has territorial jurisdiction. *See Dyson v. United States*, 848 A.2d 603, 610 (D.C. 2004) ("the trial court had territorial jurisdiction because an element of [the offense] . . . occurred within the boundaries of the District of Columbia" (citing *United States v. Baish*, 460 A.2d 38, 40 (D.C. 1983)) ("Where [the criminal act] serves as one of several constituent elements to the complete offense, we have found jurisdiction to prosecute . . ., even though the remaining elements occurred outside the District.") (citing *Adair v. United States*, 391 A.2d 288, 290 (D.C. 1978)) (internal quotation marks omitted).

Here, Mr. Banks' case falls squarely under the principles articulated in *Hunter, Dyson,* and other cases. Order #18 was issued against Mr. Banks in the District of Columbia and his disobedience of the prohibitions set out in the order had a "direct influence upon the administration of justice"; "[t]he administration of justice is . . . obstructed wherever the act [of disobedience] is done; and the place of the solicitation is absolutely of no consequence." *Hunter, supra,* 48 U.S. App. D.C. at 25. Mr. Banks committed contemptuous acts in that he disobeyed a District of Columbia court order and thus obstructed the administration of justice by (1) placing an advertisement in the Federal Times (which, as indicated by Ms. Eickman's and Ms. Williams's testimony, is distributed in the District) from his Virginia telephone and using descriptions prohibited by Order #18 ("Former Administrative Law Judge[]"; "a former Judge"; and "nationwide representation"), and failing to include the required disclaimer (including his lack of admission to practice law in any jurisdiction); (2) placing an

13

advertisement from Virginia with a District of Columbia radio station, using words prohibited by Order #18 ("Judge Simon Banks Group" and "Judge Simon Banks"), and failing to include the required disclaimer (including his lack of admission to practice law in any jurisdiction); and (3) meeting with a prospective client, referring to himself as "a former administrative judge," and agreeing to represent the individual at an administrative hearing at the federal Department of Education, located in the District; and (4) describing himself or his firm to a criminal investigator and an official of the Department of Education by using terms prohibited by Order #18: "Judge Banks," "Judge Banks' Group," "Administrative Law Judges," and "Nationwide Representation." *See Crutchfield, Ford, Hunter, supra.* In short, he held himself out as authorized to practice law in this jurisdiction. Moreover, in each instance, at least one element of criminal contempt, "causing an obstruction of the orderly administration of justice," took place in the District. *See Dyson, Baish, Adair, supra.*

Contrary to Mr. Banks' argument, there can be no doubt that the government proved the other element of criminal contempt, willful disobedience of a court order. Mr. Banks clearly was aware of the acts prohibited by this court's 1987 injunction, as well as those addressed in the expanded 1995 Order #18, which is at issue here. Significantly, he knew that in *Banks III, supra,* we affirmed his criminal contempt conviction, in part, because he "placed an advertisement in the Federal Times describing himself as a former administrative law judge and stating that he provided nationwide representation, without the statement required by paragraph 6 of [the court order]." *Id.* at 997, 1003. Here, the evidence shows that Mr. Banks willfully disobeyed Order #18 by placing the advertisements in the Federal Times, a publication distributed in the District and directed toward federal government employees, and on WJZW-FM, a radio station located in the District, and using obviously

14

15

prohibited descriptions of himself and his firm without the required disclaimer designed to alert readers and listeners that he had no authority whatsoever to practice law in the District. Furthermore, through these advertisements as well as his communication with the criminal investigator and federal Department of Education official, both based in the District, in which he described himself as a judge and a former administrative law judge, Mr. Banks willfully and wrongfully used prohibited terms and held himself out as one authorized to practice law in this jurisdiction, in blatant violation of Order #18. Willful disobedience also is present because Mr. Banks knew from the affirmance of his contempt conviction in *Banks III* that "'[w]e demand compliance with court orders – subject to sanction for contempt – until they are reversed on appeal or otherwise are modified by motion . . . .'" *Id.* at 1001-1002 (quoting *Kammerman v. Kammerman*, 543 A.2d 794, 798-99 (D.C. 1988); *see also Baker v. United States*, 891 A.2d 208, 212-13 (D.C. 2006); *In re Marshall*, 445 A.2d 5, 7 (D.C. 1982); *Howat v. Kansas*, 258 U.S. 181 (1918). In short, we are satisfied beyond a reasonable doubt that in light of the evidence presented by the government, the designated judge properly convicted Mr. Banks of criminal contempt because of his contemptuous acts and his willful violation of Order #18, which caused an obstruction of the orderly administration of justice. *Banks III*, *supra*, 805 A.2d at 1003; *Jones*, *supra*, 709 A.2d at 723.

Accordingly, for the foregoing reasons, we affirm the order of April 8, 2004, adjudging Mr. Banks guilty of criminal contempt as charged.

*So ordered.*